[Civ. No. 13930. First Dist., Div. Two. Aug. 5, 1949.]

FIREMAN'S FUND INDEMNITY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and WILLIAM WHITAKER, Respondents.

Leonard, Hanna & Brophy for Petitioner.

T. Groezinger, John A. Rowe, Jr., Gladstein, Andersen, Resner & Sawyer and Lloyd E. McMurray for Respondents.

DOOLING, J.—Petitioner seeks to annul an award of workmen's compensation to respondent Whitaker. ██ Whitaker was employed from 1942 to 1945, in Richmond Shipyard No. 1 of the Permanente Metals Corporation. He was working with steel parts and averaged about three hours per working day grinding steel upon grindstones. About two months after his discharge Whitaker sought employment as a carpenter with the U. S. government and an examination disclosed that he was suffering from pneumoconiosis to an extent which incapacitated him for physical labor. The commission found that while working as a grinder in the shipyard Whitaker inhaled dust which aggravated a previous condition of his lungs, causing a temporary total disability. Petitioner claims that this finding rests on no substantial evidence.

Whitaker had worked as a miner doing dry drilling underground for about four years ending in 1921 and X-rays of his chest taken at the San Francisco Hospital in 1933 showed "spotty densities associated with long standing pneumoconiosis." However, he was not disabled from working by this condition and in 1937 while in the San Francisco Hospital for treatment of cellulitis of the right leg and hernia the record shows: "Clinical examination of the chest at this time showed nothing remarkable."

Whitaker was examined by Dr. Farber who reported:

"The patient has approximately a five-year history extending from 1916 to 1921, during which time he was intermittently exposed to fine sandstone. There is an excellent possibility that this patient's pulmonary difficulties began at that time. His three-year history of exposure to dust from grinding wheels of several types between 1942 to 1945, brings up the possibility that this patient's lungs received additional insults during this time. He states that he wore no mask or respirator. If it is possible, it would be advisable to obtain an expert opinion on the types of dust that this man was exposed to and the possible concentrations. If these concentrations were marked and this patient had adequate exposure to siliocosis-producing irritants, then it is reasonable to consider that this patient's lungs received additional trauma during his work between 1942 and 1945."

It was not possible to get expert opinion as to the types and concentrations of dust to which Whitaker was exposed since no record had been made and the plant was dismantled at the time of the hearings.

Another medical witness, Dr. Wiper, reported: "In all probability the patient's silicosis was acquired while working as a dry rock driller . . . between 1915 and 1918. Aggravation of this silicotic process could have been accomplished at the Permanente Company-Richmond Shipyards, while working as a shipfitter only if the dust concentration in this employment had reached pathological levels."

Petitioner points out that the medical witnesses testified to no more than a possibility that Whitaker's pneumoconiosis was aggravated by the inhalation of dust while working as a grinder. As stated in *Travelers Ins. Co.* v. *Industrial Acc. Com.*, 33 Cal.2d 685, 687 [203 P.2d 747]: "An award based solely upon evidence tending to prove only a possibility of industrial causation is conjectural and cannot be sustained." However, expert evidence of a medical possibility taken with other evidence of a nonexpert character may be sufficient to support an inference of medical probability. (See cases collected in the note in 135 A.L.R. commencing at p. 532.)

In *De Filippo's Case*, 284 Mass. 531 [188 N.E. 245, 247], also a silicosis case, the court said: "Where the relation of cause and effect between two facts has to be proved, the testimony of an expert that such relation exists (citation) or probably exists (citation), has been held enough. But the testimony of an expert that such relation is possible, conceivable or reasonable, without more, leaves the issue trembling in the balance. (Citation.) Slight additional circumstances, however, may tip the scale. Expert testimony that an accident would be an adequate cause of subsequent disease has been held 'sufficient, taken in connection with the plaintiff's testimony that his health was good before the accident.' "

In this case Whitaker testified that he engaged in active physical labor without pulmonary difficulty until after he had started working in the shipyard; that a great amount of dust was created in the grinding óperation, a wheel 9 inches in diameter being worn away in about five days; that he would feel the particles striking his face and "if I was perspiring, a certain amount of it would stick to my skin . . . I know when I blew my nose or anything of that kind or if I coughed and spit, I know I get plenty of black marks

on my handkerchief and whatever I spit up would be discolored to some extent''; and that after he had worked at the shipyard for a considerable period of time ''I noticed myself not feeling good . . . short of breath and tired. My legs were so tired I just crawled along. That was in the later period of my employment there.''

We cannot say that the evidence of the amount of dust breathed in by Whitaker and the history of his increasing lassitude and shortness of breath as he continued to work as a grinder, coupled with the medical testimony above quoted of the possibility of aggravation of his pneumoconiosis by breathing dust in undue quantities, do not reasonably support the finding of the commission. Although there is no direct proof that the dust was silica-bearing, since no such proof is available, the inference from Whitaker's reaction that it was cannot be held unreasonable.

Award affirmed.

Goodell, J., concurred.