[Civ. No. 14176. First Dist., Div. One. Dec. 9, 1949.]

NATIONAL AUTOMOBILE & CASUALTY INSURANCE COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and WALTER LONNON, Respondents.

Henry G. Sanford and Joseph A. Brown for Petitioners.

T. Groezinger and Alfred C. Skaife for Respondents.

PETERS, P. J.—Walter Lonnon was the husband and is the heir at law of Mabel Lonnon, a nurse who died during the time she was acting as supervisor of nurses for Saints John Hospital in San Francisco. Neither Walter Lonnon, nor the two adult children of the parties, was in fact dependent on Mabel Lonnon. Lonnon filed an application to recover medical and burial expenses, the application alleging that in the course and scope of her employment Mabel had "accidentally sustained a laceration of the arm, followed by infection," and died as a result thereof. After a hearing, the commission found that Mabel sustained an injury arising out of and occurring in the course of her employment in that "Said deceased was on her feet for long hours at a time while performing her said services and such activities aggravated or precipitated an acute attack of thrombophlebitis, proximately causing her death on 17 October 1947." Based on this finding, an award was made for disability benefits payable prior to the death of Mabel, and for burial, medical and legal expenses. Inasmuch as it appeared that the hospital was carrying a limited insurance indemnity policy, part of the award was made against the insurance carrier and part against the hospital. It appears from the record that after the referee had submitted his proposed findings to a panel of the commission, the panel instructed the referee to include findings that the hospital was wilfully uninsured, and to increase all awards against it 10 per cent as a penalty. This was done, and the awards made. Both the hospital and its carrier petition for a writ of review.

The first major contention made is that the award is void inasmuch as the application filed by the husband averred that death was caused by an arm infection, while the commission found that death was caused by thrombophlebitis aggravated by the employment. This is claimed to be a fatal variance. No findings were made at all as to the arm infection, and petitioners urge that there was thus a failure to find on a material issue. It is seriously contended that there was no

evidence at all of an aggravation of the thrombophlebitis caused by the employment.

There is no necessity of reviewing the record at length. The record shows that prior to her employment by Saints John Hospital, Mabel suffered from thrombophlebitis of the legs, and that her death was caused by a shower of emboli caused by the thrombophlebitis which lodged in her heart, brain and lungs. There is also no doubt that Mabel did cut her arm in the course and scope of her employment, and that the arm became infected. This condition healed shortly after her admittance to the hospital as a patient. The evidence also showed that this employee was required to be on her feet long hours while working for the hospital, and that she frequently worked long hours overtime, sometimes for the hospital but more frequently for doctors. The medical testimony was to the effect that the condition from which this employee suffered was aggravated by being on her feet for long hours. Petitioner urges that this evidence amounted to no more than a guess or conjecture on the part of the witnesses, and is not sufficient to support the challenged finding. While the evidence is not as strong as might be desired, this is partially explained by the fact that the attending physicians were both connected with the Saints John Hospital. Both doctors admitted that prior to her collapse in August of 1947, Mabel Lonnon was working too long hours and being kept on her feet too long, and that they had warned her against overwork and to get off her feet because such work was dangerous for one suffering from thrombophlebitis of the legs. In response to a direct question from the referee as to whether the long hours worked by Mabel immediately preceding her collapse had aggravated the thrombophlebitis condition, Dr. Lista replied: "Well, of course, being on one's feet too many hours would have a definite tendency to aggravate the condition." He also testified that the weakened condition of the body caused by overwork "aggravates any existing pathology," and that the chain of events where thrombophlebitis exists is frequently an embolism and coronary occlusion, and that this can be accelerated by lowered resistance caused by overwork. Dr. Morton admitted that, in Mabel's condition, it would be best for her to have kept quiet and off her feet, and that she should not have been working at all prior to her collapse. It was for the commission to weigh this evidence. (*Union Oil Co.* v. *Industrial Acc. Com.*, 211 Cal. 398, 404 [295 P. 513].)

■ While an award based solely upon evidence tending to prove only a possibility of industrial causation is conjectural and cannot be sustained (*Travelers Ins. Co.* v. *Industrial Acc. Com.*, 33 Cal.2d 685, 687 [203 P.2d 747]), here the evidence went beyond this and supports an inference of reasonable medical probability. That is all that is required. (*Fireman's Fund etc. Co.* v. *Industrial Acc. Com.*, 93 Cal.App.2d 244, 246 [208 P.2d 1033].) ■ Under the evidence, the commission could and did find that the reasonable medical probabilities were that the long hours of work aggravated the preexisting condition—a compensable injury. (*Thoreau* v. *Industrial Acc. Com.*, 120 Cal.App. 67, 70 [7 P.2d 767]; *Abelseth* v. *Industrial Acc. Com.*, 8 Cal.App.2d 270, 272 [47 P.2d 516].)

■ But little need be said about the claimed variance. The commission is not bound by strict rules of procedure. (Lab. Code, § 5708.) An examination of the record demonstrates that, from the very beginning of the hearing, it was obvious that the petitioner was relying upon aggravation of a preexisting injury as well as the claimed infection of the arm as the cause of death. It was petitioners' witnesses who demonstrated that death was caused by thrombophlebitis and not by the arm injury, and it was also petitioners' witnesses who proved that such condition was aggravated by overwork. Petitioners were not surprised by this theory. Although it would have been better practice to have moved to amend to conform to proof, the failure to do so was a mere informality which does not invalidate the award. (Lab. Code § 5709.)

■ There is no merit in the contention that there was a failure to find on a material issue, because the ultimate issue was not whether Mabel died of an arm infection, but whether death resulted from an injury arising out of and in the course of the employment. Such a finding was made.

■ Saints John Hospital objects to the 10 per cent penalty imposed on it. The insurance carrier admitted that it had issued a limited policy of insurance whereby it agreed to pay disability indemnity compensation and burial costs, and the employer—Saints John Hospital—assumed all liability for medical and surgical treatment and costs. The policy was not introduced into evidence. The commission found that the employer was wilfully uninsured and increased the award against the hospital an additional 10 per cent. In so acting, the commission purported to act pursuant to section 4554 of

the Labor Code. That section provides: "In case of the wilful failure by an employer to secure the payment of compensation, the amount of compensation otherwise recoverable for injury or death as provided in this division shall be increased ten per cent; but such increase of award shall in no event exceed $1,000. Failure of the employer to secure the payment of compensation as provided in Article 1 of Chapter 4 of Part 1 of this division is prima facie evidence of wilfulness on his part."

There seems to be no direct provision of the statute for the issuance of such a limited policy. However, there are detailed provisions whereby an employer can become a self-insurer. It may be assumed that these provisions (Lab. Code, §§ 3700-3714) authorize an employer to become a self-insurer in whole or in part, but, before an employer can avail itself of such privilege, it must secure a certificate of consent from the commission (§ 3700), and the commission may require the employer to deposit a bond or securities in an amount to be fixed by the commission. There is no contention that any such procedure was here followed by the Saints John Hospital, and the commission could undoubtedly take judicial notice of its own records, which would demonstrate that no such procedure was followed. But, under the terms of section 4554 above quoted, the failure to follow such procedure is only prima facie, not conclusive, evidence, of wilful failure to insure, and it is only in cases of "wilful failure . . . to secure the payment of compensation" where the commission is entitled to impose the 10 per cent penalty.

The record in this case demonstrates that at no time during the hearings before the referee was the question of wilful failure to insure raised. It came into the case after the referee had submitted his proposed findings, which contained no reference to this issue. The panel, without further hearing or the taking of any further evidence, instructed the referee to include a 10-per-cent penalty against the hospital. Thus, even though it appears that the hospital was partially uninsured, it also appears that at no time was the hospital given an opportunity to be heard on the issue of whether it acted wilfully in failing to insure. While its failure to insure creates a prima facie case of wilfulness, it should have been given an opportunity to show, if it could, that such failure was not wilful. It is too clear to require further discussion that failure to give the hospital an opportunity to be heard

on this issue constituted a denial of due process, and requires the annulling of this portion of the award.

The major defense of the commission on this point is that this issue was not specifically raised on the petition for rehearing, and, for that reason, cannot now be considered. (Lab. Code, § 5904.) While the point was not urged in that petition as clearly as might be desired, the petition did aver that all of the findings, which necessarily included the one here involved, were unsupported by the evidence, and alleged that, in all respects, the commission acted without and in excess of its powers. In view of the fact that a deprivation of a constitutional right is involved, these general grounds should be held to be sufficient to have preserved the point.

The award is affirmed in all respects except as to that portion of the award imposing a 10-per-cent penalty on petitioner Saints John Hospital. That portion of the award is annulled. The case is remanded to the commission with instructions to permit the petitioner Saints John Hospital to present evidence, if any it has, that its failure to insure was not wilful, and to make its findings upon such evidence and in light of the provisions of section 4554 of the Labor Code.

Ward, J., and Bray, J., concurred.

A petition for a rehearing was denied January 7, 1950, and respondents' petition for a hearing by the Supreme Court was denied February 2, 1950. Edmonds, J., voted for a hearing.