[L.A. No. 29913. In Bank. Feb. 29, 1972.]

JESSIE MATHEWS, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
WESTERN CONTRACTORS, INC., et al., Respondents.

720

## COUNSEL

Richman & Garrett and Thomas J. Toohey for Petitioner.

John C. Smith, Jr., as Amicus Curiae on behalf of Petitioner.

Rupert A. Pedrin, Gabriel L. Sipos, Lionel K. Hvolboll, Samuelsen, Bolson, Whitehead & Benes and Charles C. Ringwalt for Respondents.

Hanna & Brophy and Warren L. Hanna as Amici Curiae on behalf of Respondents.

## OPINION

**SULLIVAN, J.**—As a result of wounds received at work in a fight with a co-employee, Halfred C. Mathews died on December 3, 1969. His widow's

peition for review of the decision of the Workmen's Compensation Appeals Board (Board) denying compensation presents to us the deceptively simple question whether Labor Code section 3600, subdivision (g),[1] which bars an "initial physical aggressor" from benefits, is consonant with section 21, article XX of the California Constitution.[2] We have concluded that the state Constitution does not prohibit the Legislature from conditioning the right

---

[1]Section 3600 of the Labor Code provides: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in Section 3706, shall, *without regard to negligence,* exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

"(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment.

"(c) Where the injury is proximately caused by the employment, either with or without negligence.

"(d) Where the injury is not caused by the intoxication of the injured employee.

"(e) Where the injury is not intentionally self-inflicted.

"(f) Where the employee has not willfully and deliberately caused his own death.

"(g) *Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor.*" (Italics added.)

Hereafter, unless otherwise required by context, section references will be to the Labor Code.

[2]Section 21 of article XX of the California Constitution provides in relevant part: "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a *complete system of workmen's compensation,* by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workmen for injury or disability, and their dependents for death incurred or sustained by the said workmen in the course of their employment, *irrespective of the fault of any party.* A complete system of workmen's compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workmen and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workmen in the course of their employment, irrespective of the fault of any party; also full provision for securing safety in places of employment; full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury; full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage in all its aspects, including the establishment and management of a State Compensation Insurance Fund; full provision for otherwise securing the payment of compensation; and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character; all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government." (As amended November 5, 1918; italics added.)

Hereafter all references to section 21 shall refer to that section of article XX of the California Constitution.

to compensation upon the absence of wilful misconduct or other intentional wrongdoing. Consequently, we find that section 3600, subdivision (g), is constitutional and that the Board did not err in failing to award compensation in this case.

The unfortunate facts which gave rise to this proceeding may quickly be summarized. Mathews was employed by Western Contractors, Inc. as a heavy-duty truck driver at the Castaic Dam site in Los Angeles County. On September 30, 1969, Mathews had just stopped his truck at the dam site when he was approached by Marcus Cedillo, who was in charge of directing incoming trucks to appropriate places for unloading. Cedillo told Mathews that his truck was blocking traffic and would have to be moved. Mathews replied with an obscene remark and gesture; Cedillo responded similarly.

Mathews climbed down out of the cab of his truck and began walking toward Cedillo with his fists clenched at his sides. Cedillo, who was shorter and lighter than Mathews, picked up two rocks and began backing away. Both men hesitated, and Cedillo drew a line in the dirt with his foot, warning Mathews not to cross it. This action apparently fueled Mathews' anger. He crossed the line and advanced toward Cedillo. Cedillo threw one rock past Mathews, who ducked, lost his hard hat, and lunged toward Cedillo to grab or strike him. Cedillo struck Mathews in the forehead with the second rock; Mathews fell and lay unconscious.

As a result of the injuries thus received, Mathews died two months later without ever having regained consciousness. His widow, Jessie Mathews (applicant), sought workmen's compensation death benefits.

After holding a hearing at which the foregoing evidence was adduced and legal argument was presented, the referee determined that "[t]he evidence leads to the inescapable conclusion that Halfred C. Mathews was involved in an altercation on September 30, 1969, in which he was the initial aggressor." Nevertheless, the referee awarded full death benefits, holding section 3600, subdivision (g), unconstitutional because it denied "compensation on the basis of the fault of the injured employee."

Upon reconsideration, the Board found that the injury fell within the terms of section 3600, subdivision (g). However, it held that the section was constitutional and ordered that "applicant take nothing."

Applicant petitioned for a writ of review annulling this decision. She contends that the Board erred in finding that her husband was the initial physical aggressor in the altercation which caused his death. She also argues that even if the Board's finding is proper, she is entitled to compensation because section 3600, subdivision (g), is unconstitutional.

Section 3600, subdivision (g), bars recovery only when two conditions are present. First, the injury for which workmen's compensation is sought must "arise out of an altercation." Second, the injured employee must be the "initial physical aggressor" in that altercation. ■ Section 3202 enjoins us to construe the workmen's compensation provisions of the Labor Code liberally "with the purpose of extending their benefits for the protection of persons injured in the course of their employment." Consequently, the provisions of subdivision (g) of section 3600, which deny compensation to persons so injured, must be narrowly and strictly construed. (See *Fruehauf Corp.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 569, 577 [68 Cal.Rptr. 164, 440 P.2d 236].)

■ To "arise out of an altercation," as required by section 3600, subdivision (g), an injury must result from an exchange between two or more persons characterized by an atmosphere of animosity and a willingness to inflict bodily harm. An altercation is distinguishable from "horseplay" or "skylarking," neither of which involves such animosity, although either may result in bodily harm. (*Litzmann* v. *Workmen's Comp. App. Bd.* (1968) 266 Cal.App.2d 203, 209-210 [71 Cal.Rptr. 731]; *Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd.* (*Helm*) (1967) 247 Cal.App.2d 669, 682-683 [55 Cal.Rptr. 810].)

In this case, the record contains ample evidence to support the Board's finding that Mathews' injuries arose out of an altercation. It clearly appears that Cedillo and Mathews were not engaged in a joint frolic. On the contrary, each obviously intended to inflict physical harm upon the other; Cedillo was successful. Mathews' death followed from the injury thus sustained.

The second condition of section 3600, subdivision (g), presents more difficulty; it requires us to determine what type of conduct the Legislature intended to discourage when it denied compensation to an "initial physical aggressor." As Larson has pointed out, one of the practical difficulties in attempting to bar an aggressor from benefits is "the homely fact that, long after a quarrel is over, it is often almost impossible to determine who really started it."[3] (1 Larson, Workmen's Compensation Law (1968 ed.) § 11.15(c), p. 159.) Section 3600, subdivision (g), "imposes the necessity of selecting one overt act out of a series of hostile verbal, psychological, and physical acts as the one that, for compensation purposes, caused the quarrel and elicited the ultimate injury." (*Id.*)

The Legislature's use of the word "physical" indicates that it was pri-

---

.[3]Indeed, in this case the witnesses of this altercation have achieved a rare uniformity in their perception of the event.

marily concerned with the increased risk of injury which arises when a quarrel moves from an exchange of hostile words and nonviolent gestures to a trading of physical blows. ■ Thus, one is not an "initial physical aggressor" so long as he confines his antagonism to arguments, epithets, obscenities or insults. ■ Instead, an "initial physical aggressor" is one who first engages in physical conduct which a reasonable man would perceive to be a " 'real, present and apparent threat of bodily harm. . . .' " (*Briglia* v. *Industrial Accident Commission* (1962) 27 Cal.Comp.Cases 217, 218.)[4]

Although the issue is not free from difficulty, nevertheless the record discloses substantial evidence in support of the Board's conclusion that Mathews was the initial physical aggressor. In the context of his altercation with Cedillo, Mathews' conduct in leaving his truck and advancing upon Cedillo with clenched fists held at his sides definitely appeared menacing. Since Mathews was several inches taller and 30 pounds heavier than Cedillo, a reasonable man in Cedillo's position might have considered Mathews' acts to be a real, present and apparent threat of bodily harm.

Applicant argues that Mathews could not have been the "initial physical aggressor" because he did not "throw the first punch." ■ However, the Board has properly held that "[i]t is not necessary that there be a battery before one can be deemed a physical aggressor" (*Rosenthal* v. *Wong* (1964) 30 Cal.Comp.Cases 103, 104); " 'bodily contact . . . is not the significant factor.' " (*Briglia* v. *Industrial Accident Commission, supra,* 27 Cal.Comp.Cases 217, 218.) He who by physical conduct first places his opponent in reasonable fear of bodily harm is the "initial physical aggressor." His act need not actually cause physical harm; throwing a punch or shooting a gun is not necessary. Under appropriate circumstances, clenching a fist or aiming a gun may be sufficient to convey a real, present and apparent threat of physical injury.

■ Applicant also contends that even if Mathews became an "initial physical aggressor" by advancing on Cedillo with clenched fists, Cedillo's later, unjustified use of excessive force in repelling the attack changed the situation, removing the bar to applicant's recovery. However, section 3600, subdivision (g), simply does not support applicant's thesis that

---

[4]We reject the suggestion that in defining the conduct proscribed by section 3600, subdivision (g), we should be governed by the rules of criminal law defining assault. Had the Legislature intended to adopt those rules, it surely would have used the technical terms of the criminal law rather than the words it chose. Although there may be a highly developed body of law covering criminal assault, it was designed to meet different problems and effectuate different policies. Its technical rules and distinctions should not be applied mechanically to workmen's compensation law.

the label "initial physical aggressor" automatically shifts from one disputant to the other whenever either uses excessive force. Rather the section bars compensation to the *"initial* physical aggressor," to him who *first* introduces an element of physical violence into the confrontation, thus creating the risk of injury. Later acts of his opponent, which unjustifiably increase the level of violence, do not absolve the *initial* aggressor. Consequently, even if Cedillo used excessive force in repelling Mathews' attack, Mathews was, and remained, the initial physical aggressor. Under these circumstances, the Board correctly concluded that section 3600, subdivision (g), precludes any award of death benefits to applicant.

Her first argument having failed, applicant next asserts that she is entitled to compensation because section 3600, subdivision (g) is unconstitutional. She points out that section 21, article XX of the California Constitution gives the Legislature power to create a complete system of workmen's compensation providing benefits "irrespective of the fault of any party." Applicant argues that " 'fault' connotes volitional as well as negligent activity" and that section 21 prohibits the Legislature from conditioning the right to compensation on the absence of fault. Since section 3600, subdivision (g), denies compensation to those who wilfully create violent confrontations, she contends that it implicitly involves a "fault" criterion prohibited by section 21. In support of her argument, she cites *State Comp. Ins. Fund* v. *Ind. Acc. Com. (Hull)* (1952) 38 Cal.2d 659 [242 P.2d 311], in which we abolished the judicially created aggressor defense.

While applicant's argument has a surface plausibility, an examination of the legislative history behind the workmen's compensation laws and section 21 of article XX demonstrates that the contention rests upon a basic misconstruction of the Constitution. As the following discussion demonstrates, the use of the phrase "irrespective of the fault of any party" in section 21 was intended only to give the Legislature power to grant benefits unhampered by common law tort concepts of *negligence;* it has never been construed as prohibiting the Legislature from increasing, decreasing or even eliminating awards based upon the *wilful wrongdoing* of a party.

At the turn of the last century, a public clamor arose for reform of the laws relating to recovery for injuries received at work. By that time increasing industrialization in the United States had combined with an unfortunate development of common law tort doctrines[5] to create

---

[5]To recover at common law, the employee had the heavy burden of showing that his injuries resulted from his employer's negligence. Furthermore, his claim was defeated if his injuries resulted in part from his own negligence, or from that of his

a large number of industrial injuries for which workmen were denied all recovery. (See 1 Larson, *supra,* § 5.20, pp. 37-39.) California's first response to this tide of public opinion was to make the fellow-servant rule and the assumption of risk defense inapplicable in certain types of accidents. (Stats. 1907, ch. 97, pp. 119-120; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1970) § 1.03[3][c], pp. 1-15.)

Such minor revisions, however, proved insufficient. In 1911, California joined a rapidly growing number of states in adopting a true workmen's compensation act (Stats. 1911, ch. 399, p. 796), based on similar legislation enacted in Germany. (See 2 Hanna, *supra,* § 1.04, pp. 1-18—1-23; 1 Larson, *supra,* § 5.10, pp. 33-36.) The California legislation, commonly known as the Roseberry Act, abolished the assumption of risk defense and the fellow-servant rule in cases involving industrial injuries, and greatly modified the contributory negligence defense in such cases. (Stats. 1911, ch. 399, § 1, p. 796.)

In addition, the Roseberry Act established a voluntary system of workmen's compensation. The liability of a participating employer for his employee's injuries was no longer governed by common law tort doctrines. Rather, the act imposed liability for compensation "without regard to negligence" for injuries accidentally sustained by an employee while "performing service growing out of and incidental to" their employment. (Stats. 1911, ch. 399, § 3, pp. 796-797.)[6] However, the employer was

---

co-employees. Also, it was often held that by accepting employment, the worker had assumed the normal risks of employment and could not recover for injuries arising therefrom. Court costs were a further deterrent to an employee's recovery. (*Western Indemnity Co.* v. *Pillsbury* (1915) 170 Cal. 686, 692-694 [151 P. 398].)

[6]Section 3 of the Roseberry Act, stated: "Liability for the compensation hereinafter provided for, in lieu of any other liability whatsoever, shall, *without regard to negligence,* exist against an employer for any personal injury accidentally sustained by his employees, and for his death if the injury shall approximately cause death, in those cases where the following conditions of compensation concur:

"(1) Where, at the time of the accident, both the employer and employee are subject to the provisions of this act according to the succeeding sections hereof.

"(2) Where, at the time of the accident, the employee is performing service growing out of and incidental to his employment and is acting within the line of his duty or course of his employment as such.

"(3) Where the injury is approximately [*sic*] caused by accident, either with or without negligence, and *is not so caused by the wilful misconduct of the employee.*

"And where such conditions of compensation exist for any personal injury or death, the right to the recovery of such compensation pursuant to the provisions of this act, and acts amendatory thereof, shall be the exclusive remedy against the employer for such injury or death, except that when the injury was caused by the personal gross negligence or wilful personal misconduct of the employer, or by reason of his violation of any statute designed for the protection of employees from bodily injury, the employee may, at his option, either claim compensation under this

not liable for compensation if the injury was caused by the employee's own wilful misconduct. (*Id.*) Where the injury resulted from the employer's personal gross negligence, wilful misconduct, or violation of any statute designed for the protection of the employee from bodily injury, the injured employee was permitted to choose between statutory compensation and a common law action for damages. (*Id.*) Under the voluntary plan, therefore, compensation was available without regard to negligence of either employer or employee, but was still denied to an employee guilty of wilful misconduct.

One month after the Roseberry Act became effective, section 21 of article XX was approved by the voters and added to the Constitution. The new section provided: "The legislature may by appropriate legislation create and enforce a liability on the part of all employers to compensate their employees for any injury incurred by said employees in the course of their employment *irrespective of the fault of either party.*" (Italics added.)

Because few employers had chosen coverage under the voluntary plan established by the Roseberry Act, in 1913 the Legislature exercised the power conferred upon it by section 21 of article XX and enacted a compulsory scheme of workmen's compensation. (See 2 Hanna, *supra*, § 1.04[3], p. 1-23.) Officially titled the "workmen's compensation, insurance and safety act" (Stats. 1913, ch. 176, § 1, p. 279), the new act was popularly known as the Boynton Act. Aside from changing workmen's compensation from a voluntary to a compulsory system, the Boynton Act strengthened the powers of the Industrial Accident Commission, extended greater control over compensation insurers, and gave the commission power to prescribe safety regulations for employers.

Section 12 of the Boynton Act[7] carried forward the provisions of section

act, or maintain an action for damages therefor; in all other cases the liability of the employer shall be the same as if this and the succeeding sections of this act had not been passed, but shall be subject to the provisions of the preceding sections of this act." (Italics added.) (Stats. 1911, ch. 399, § 3, pp. 796-797.)

[7]Section 12 of the Boynton Act provided: "(a) Liability for the compensation provided by this act, in lieu of any other liability whatsoever, shall, *without regard to negligence,* exist against an employer for any personal injury sustained by his employees by accident arising out of and in the course of the employment and for the death of any such employee if the injury shall proximately cause death, in those cases where the following conditions of compensation concur:

"(1) Where, at the time of the accident, both the employer and employee are subject to the compensation provisions of this act.

"(2) Where, at the time of the accident, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment as such.

"(3) Where the injury is proximately caused by accident, either with or without

3 of the Roseberry Act, imposing liability for compensation "without regard to negligence." An employee injured by his own wilful misconduct was still denied compensation. As under the Roseberry Act, an employee was permitted to choose a damage action rather than statutory benefits if his injuries were caused by the employer's gross negligence or wilful misconduct, indicating "a wilful disregard of the life, limb, or bodily safety of employees." In addition, section 12 contained new language precluding from compensation those injured by their own intoxication.

In 1917 the Legislature substantially revised the existing law to meet problems which had arisen under the Boynton Act. The "workmen's compensation, insurance and safety act of 1917" (Stats. 1917, ch. 586, § 2, p. 833) represented the full evolution of the workmen's compensation system. The policy behind the statute and its goals were summarized in its first section which has been reproduced in the margin.[8]

---

negligence, and *is not so caused by the intoxication or the wilful misconduct of the injured employee.*

"(b) Where such conditions of compensation exist, the right to recover such compensation pursuant to the provisions of this act, shall be the exclusive remedy against the employer for the injury or death, except that when the injury was caused by the employer's gross negligence or wilful misconduct and such act or failure to act causing such injury was the personal act or failure to act on the part of the employer himself, or if the employer be a partnership on the part of one of the partners, or if a corporation, on the part of an elective officer or officers thereof, and such act or failure to act indicated a wilful disregard of the life, limb, or bodily safety of employees, any such injured employee may, at his option, either claim compensation under this act or maintain an action at law for damages.

"(c) In all other cases where the conditions of compensation do not concur, the liability of the employer shall be the same as if this act had not been passed." (Italics added.) (Stats. 1913, ch. 176, § 12, pp. 283-284.)

[8]Section 1 of the workmen's compensation, insurance and safety act of 1917 provided: "This act and each and every part thereof is an expression of the police power and is also intended to make effective and apply to a complete system of workmen's compensation the provisions of section seventeen and one-half of article twenty and section twenty-one of article twenty of the constitution of the State of California. A complete system of workmen's compensation includes adequate provision for the comfort, health, safety and general welfare of any and all employees and those dependent upon them for support to the extent of relieving from the consequences of any injury incurred by employees in the course of their employment, *irrespective of the fault of any party;* also full provision for securing safety in places of employment, full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury, full provision for adequate insurance coverage against the liability to pay or furnish compensation, full provision for regulating such insurance coverage in all its aspects including the establishment and management of a state compensation insurance fund, full provision for otherwise securing the payment of compensation, and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any matter arising under this act to the end that the administration of this act shall accomplish substantial justice in all cases expeditiously, inexpensively and without incumbrance of any character; all of

Section 6 of the 1917 act[9] continued in amended form the provisions of section 12 of the Boynton Act and section 3 of the Roseberry Act. Again liability for compensation was imposed on employers "without regard to negligence." Nevertheless, the 1917 act continued to deny compensation for injuries resulting from the employee's own intoxication and, for the first time, also barred statutory benefits where the injury was intentionally self-inflicted. Although an employee's wilful misconduct no longer totally precluded his recovery, it reduced his award by 50 percent. Similarly, an employee injured by his employer's serious and wilful misconduct was not permitted a damage action, but his award was increased by 50 percent.

which matters contained in this section are expressly declared to be the social public policy of this state, binding upon all departments of the state government." (Italics added.) (Stats. 1917, ch. 586, § 1, pp. 832-833.)

[9]"Sec. 6. (a) Liability for the compensation provided by this act, in lieu of any other liability whatsoever to any person, shall, *without regard to negligence*, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any such employee if the injury shall proximately cause death, in those cases where the following conditions of compensation concur:

"(1) Where, at the time of the injury, both the employer and employee are subject to the compensation provisions of this act.

"(2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment.

"(3) Where the injury is proximately caused by the employment, either with or without negligence, and *is not caused by the intoxication of the injured employee, or is not intentionally self-inflicted.*

"(4) *Where the injury is caused by the serious and wilful misconduct of the injured employee, the compensation otherwise recoverable by him shall be reduced one-half*; provided, however, that such misconduct of the employee shall not be a defense to the claim of the dependents of said employee, if the injury results in death, or to the claim of the employee, if injury results in a permanent partial disability equaling or in excess of seventy per cent of total; and provided, further, that such misconduct of said employee shall not be a defense where his injury is caused by the failure of the employer to comply with any provision of law, or any safety order of the commission, with reference to the safety of places of employment.

"(b) Where such conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this act, shall be the exclusive remedy against the employer for the injury or death; provided, that *where the employee is injured by reason of the serious and wilful misconduct of the employer*, or his managing representative, or if the employer be a partnership, on the part of one of the partners, or if a corporation, on the part of an executive or managing officer thereof, *the amount of compensation otherwise recoverable for injury or death, as hereinafter provided, shall be increased one-half*, any of the provisions of this act as to maximum payments or otherwise to the contrary notwithstanding; provided, however, that said increase of award shall in no event exceed twenty-five hundred dollars.

"(c) In all other cases where the conditions of compensation do not concur, the liability of the employer shall be the same as if this act had not been passed." (Italics added.) (Stats. 1917, ch. 586, § 6, pp. 834-835.)

The same month that the 1917 act was approved, the Legislature, by joint resolution, recommended to the voters an amendment of section 21 of article XX. The proposed amendment duplicated in large measure section 1 of the 1917 act,[10] and was intended to remove all doubts as to the constitutionality of then existing workmen's compensation laws.[11] On November 5, 1918, the amendment was approved by the voters.

[10]The text of section 21, article XX, as amended, is contained in pertinent part in footnote 2, *ante.* The quoted portion of that section should be compared with the excerpt of section 1 of the 1917 act, reproduced in foonote 8, *ante.*

[11]The only two official arguments regarding the 1918 amendment to section 21, article XX, are as follows:

"This amendment is a necessary amplification and definition of the constitutional authority vested in the legislature by the amendment to the Constitution adopted October 10, 1911, to enable the enactment of a complete plan of workmen's compensation, which amendment failed to express sanction for the requisite scope of the enactment to make a complete and workable plan. Such a complete plan embraces four principal things, each an essential component of one act:

"*First*—Compulsory compensation provisions requiring indemnity benefits for injury and death, irrespective of fault.

"*Second*—Thoroughgoing safety provisions.

"*Third*—Insurance regulation, including state participation in insurance of this character.

"*Fourth*—An administrative system involving the exercise of both judicial and executive functions.

"The earlier amendment contains no expression covering safety and insurance matters, and contains only meager and indefinite authority for administration. Notwithstanding obvious limitations, the legislature did incorporate in one enactment, the full plan of compensation, insurance and safety, with adequate provisions for administration. This act, with slight modifications, has been in effect more than four and one-half years. It has given full satisfaction, both in its effects and in its administration in all departments. The state has built up a financial institution of great magnitude—the State Compensation Insurance Fund—which has transacted a business running into millions of dollars.

"*The proposed amendment is designed to express full authority for legislation; to sanction, establish and protect the full plan in all essentials where the courts have not already passed upon it.*

"*As it proves itself, a law is entitled to approval and to be established upon a firm foundation. As the Workmen's Compensation Insurance and Safety Act has proved to be beneficient, humane and just, and has wholly justified its enactment in all features, it should receive full constitutional sanctions.*

Edgar A. Luce<br>State Senator Fortieth District

"This amendment enlarges the scope of the previous amendment to the constitution, which furnished the authority for our present workmen's compensation act. In addition to compensation of workmen for injuries received, any complete scheme should provide for authority to require the use of safety devices, and that the state, as well as private insurance companies, can furnish insurance to employers against liability for injuries to their employees. The amendment of 1911, while providing for compensation, did not give the desired full and complete sanction for safety

Section 21 of article XX has not been amended since 1918. Nor have the basic provisions of the workmen's compensation law been changed in the intervening years. Section 3600 of the Labor Code (see fn. 1, *ante*), which is the codification of section 6 of the 1917 act, still imposes upon employers liability for compensation "without regard to negligence." It still denies compensation where the injury was caused by the employee's intoxication or was intentionally self-inflicted. The only significant change has been the addition, in 1961, of subdivisions (f) and (g) which bar the payment of benefits where the employee has "willfully and deliberately caused his own death" or where the injury arises "out of an altercation in which the injured employee is the initial physical aggressor."

The history detailed above convincingly demonstrates that the words "irrespective of the fault of any party" were not inserted in section 21, article XX in order to forbid the Legislature from conditioning compensation on the absence of intentional wrongdoing. Rather, they were used to enable the Legislature to approach the problem free from the strictures of the common law. Since the passage of the Roseberry Act in 1911, employers have had to compensate their employees "without regard to negligence." But at the same time, each successive workmen's compensation act has denied or reduced benefits where the employee engaged in wilful misconduct. Since 1913, compensation has been denied if a workman's injury resulted from his intoxication, and since 1917 if it was intentionally self-inflicted. Subdivisions (f) and (g), added in 1961, merely continue the pattern of excluding from coverage employees injured by their own intentional wrongdoing. It would be startling, indeed, if we were now to hold that each of these workmen's compensation acts was unconstitutional because it conditioned the right to compensation on the absence of intentional misconduct.

■ Furthermore, our examination of the history behind section 21, article XX indicates that the section was added to the Constitution and then amended for the sole purpose of removing all doubts as to the con-

---

legislation or the creation of a state insurance fund. Laws, however, have been passed by the legislature and acted upon for a number of years which compel the use of safety devices, and provide also for the operation of the present state insurance fund.

"*Our workmen's compensation act has proved such a success and has won such universal favor with employee, employer and public that it should be put upon a firm constitutional basis beyond the possibility of being attacked on technical grounds or by reason of any questioned want of constitutional authority. Senate Constitutional Amendment No. 30 places beyond any doubt the constitutional authority for a complete workmen's compensation system.*

Herbert C. Jones,<br>State Senator Twenty-eighth District"

(Italics added.)

stitutionality of the then existing workmen's compensation statutes. (See fn. 11, *ante.*) Thus, the section cannot be read as invalidating basic features of those laws as they have existed since 1911. (See Coats, *Liability for Fault* (1967) 42 State Bar J. 534.)

In sum, the phrase "irrespective of the fault of any party," which appears in section 21, article XX, must be equated with the phrase "without regard to negligence," which appears in section 3600. The Legislature quite obviously felt that "fault" and "negligence" were equivalent. From the Roseberry Act until the present day, each statute has imposed liability "without regard to negligence," while for virtually all of that period the Constitution has contained the phrase "irrespective of the fault of any party." Indeed, in the 1917 act both phrases were used in the same act —the "fault" language in section 1 (see fn. 8, *ante*) which states the purposes of the act, and the "negligence" language in section 6 (see fn. 9, *ante*) which lies at the core of the substantive provisions. When in the same year, 1917, the Legislature recommended the 1918 amendment to section 21, article XX, it likewise used the phrase "irrespective of the fault of any party" to mean that liability could be imposed without regard to negligence. "Irrespective of fault," just as "without regard to negligence," was used as a key phrase to indicate that compensation would no longer be ruled by common law tort doctrines. Both phrases became associated with workmen's compensation in much the same manner as "no-fault" has become attached to a broad range of recent proposed revisions of tort law relating to automobile accidents.

Finally, to hold that section 21 of article XX prohibits the Legislature from taking into account the intentional wrongdoing of employer or employee in providing for compensation would cast doubt over a vast number of other Labor Code provisions which incorporate a notion of intentional fault. If subdivision (g) of section 3600 were to fall, so also should subdivisions (d), (e), and (f), which deny compensation where the injury is caused by intoxication, is wilfully self-inflicted, or is the product of "a deliberate and wilful act of suicide." Similarly vulnerable would be section 4551, which reduces the award by one-half in most cases in which the injury results from the employee's serious and wilful misconduct, and section 4553, which increases the award by one-half where the injury is caused by the employer's serious and wilful misconduct. Doubt would also be cast upon section 4554, which augments the award by 10 percent where the employer wilfully fails to secure payment of compensation; section 4555, which permits an additional award of attorneys' fees under such circumstances; and section 4557, which increases compensation by 50 percent if the injured employee is under 16 years of age and illegally

employed at the time of the injury. Other provisions adjusting the award according to the intentional fault of the parties are sections 4053, 4054, 4056, 5705, subdivisions (d) and (e), and 5814. (See generally, Coats, *supra*, 42 State Bar J. 534.) We do not find that section 21 of article XX requires any such wholesale butchery of the existing workmen's compensation law.

Contrary to applicant's assertion, our decision in *State Comp. Ins. Fund* v. *Ind. Acc. Com. (Hull), supra,* 38 Cal.2d 659 does not compel the result for which she here contends. While certain broad language in that opinion[12] might be construed as intimating that section 21, article XX forbids the legislative enactment of an aggressor defense, such language was unnecessary to the opinion, and does not represent the considered view of this court on the subject.

In *Hull* we were concerned only with the *judicially created* aggressor defense which had evolved in the absence of a specific legislative directive. That judicial doctrine had relied upon the reasoning that by entering into an altercation, the aggressor was departing from his work duties and satis-

---

[12]Applicant refers to the following portions of *Hull*:

"The workmen's compensation law as declared in the Constitution and statutes compels affirmance of the award. The Constitution confers upon the Legislature power to establish a system of workmen's compensation and create and enforce a liability on employers to compensate their workmen for injury sustained in the course of their employment '*irrespective of the fault of any party.*' (Italics added.) (Cal. Const., art. XX, § 21.) The only requirements of the statute are, that to be compensable, an injury must 'arise out of' and 'occur in the course of' the employment. (Lab. Code, § 3600.)" (38 Cal.2d 659, 660.)

"The crucial issue is whether it 'arose out of' the employment, and that poses the question of whether there is a causal connection between the employment and the injury. That that is the only issue follows from the Workmen's Compensation Act which excludes fault and contributory negligence of the employee and assumption of risk as defenses. That is the express declaration of the Constitution and statutes relating to workmen's compensation. Indeed the statute compels that result inasmuch as it declares that 'serious and wilful misconduct' on the part of the employee does not defeat his recovery; it merely cuts it in half, and not even that under certain conditions (Lab. Code, § 4551), thus indicating clearly that misconduct on his part is not a defense. Hence the charge of aggressor cannot be a defense, for it is nothing more than an assertion that the employee was at fault—was to blame—brought it on himself." (Italics omitted.) (*Id.* at p. 661.)

"The contention is made that considerations of public policy require that recovery be denied in cases where the employee is injured while engaged in the violation of a penal statute, because, to allow recovery in such a case, would permit a person to benefit by his own wrong. That appears to be the real basis of many of the decisions denying recovery. The effect of such a holding is to deny recovery because of the fault of the employee contrary to the express provisions of the Constitution and statutes relating to workmen's compensation. The question of policy is for the people and the Legislature in the first instance and here they have spoken in no uncertain language, saying that fault, serious and wilful misconduct, and contributory negligence do not bar recovery." (*Id.* at p. 670.)

fying a personal desire. Therefore, any injuries received during the altercation were said not to "arise out of and in the course of employment."

In *Hull,* we rejected this reasoning, recognizing " 'that work places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities are created by working together on the assembly or in traffic. Others initiated outside the job are magnified to the breaking point by its compelled contacts. No worker is immune to these pressures and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent pressures. That it is not relevant to the immediate task, *involves a lapse from duty, or contains an element of volition or illegality does not disconnect it from them nor nullify their causal effect in producing its injurious consequences.'* " (Original italics.) (38 Cal.2d 659, 666; quoting *Hartford Accident & Indemnity Co.* v. *Cardillo* (1940) 112 F.2d 11, 17 [72 App.D.C. 52], cert. den. (1940) 310 U.S. 649 [84 L.Ed. 1415, 60 S.Ct. 1100].)

Pointing out that the Legislature had provided compensation despite contributory negligence and assumption of risk, and had only reduced the award by 50 percent where the injured employee engaged in wilful misconduct, we found no basis for inferring that the Legislature had intended to deny compensation to aggressors. Instead, injuries resulting from altercations clearly fell within the general provisions allowing awards for injuries arising out of and in the course of employment. Since we found that the Legislature intended to allow aggressors to recover, there was no justification for the judicial doctrine precluding an award in such circumstances.

In *Hull* we held it improper for the judiciary to supplement the workmen's compensation scheme established by the Legislature. Since *Hull,* the Legislature has expressly provided that initial physical aggressors shall not receive compensation. As in *Hull* we now follow the expressed intent of the Legislature.

At oral argument applicant for the first time sought to challenge section 3600, subdivision (g) as being in conflict with article I, section 11 of the California Constitution[13] in that it prohibits workmen's compensation benefits to a class of employees without a rational basis. Con-

---

[13]"All laws of a general nature shall have a uniform application."

trary to the contention of the employer and the Board, section 5904,[14] which deems waived all objections not raised in the applicant's petition for reconsideration, does not prevent us from reaching that issue. Constitutional challenges, which are not cognizable by the W.C.A.B., may be brought before the reviewing court. (*National A. & C. Ins. Co.* v. *Ind. Acc. Com.* (*Lonnon*) (1949) 95 Cal.App.2d 10, 16 [212 P.2d 1]; 1 Hanna, *supra,* § 10.08[6], p. 10-41.)

Applicant's point is that enrollees in economic opportunity programs (§ 4207)[15] and disaster service workers (§ 4353)[16] are not specifically barred from workmen's compensation recovery when they are the initial physical aggressors, whereas employees are generally so barred under section 3600, subdivision (g). But the Constitution does not require uniform treatment, only a reasonable basis for legislative classification. (*Bilyeu* v. *State Employees' Retirement System* (1962) 58 Cal.2d 618, 623 [24 Cal.Rptr. 562, 375 P.2d 442].) It is the duty of the Legislature to determine whether the facts justify such a classification and the burden of the challenger to show that the legislative conclusion is arbitrary. (*Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 288-289 [32 Cal.Rptr. 830, 384 P.2d 158].) As we said in *Sacramento M. U. Dist.* v. *P. G. & E. Co.* (1942) 20 Cal.2d 684,

---

[14]Section 5904 provides: "The petitioner for reconsideration shall be deemed to have finally waived all objections, irregularities, and illegalities concerning the matter upon which the reconsideration is sought other than those set forth in the petition for reconsideration."

[15]Section 4207 provides in pertinent part as follows: "Compensation shall be furnished an enrollee for injury . . . if the following conditions occur:

"(a) Where at the time of injury, the enrollee is performing services and is acting within the scope of his duties as a recipient of aid within an economic opportunity program.

"(b) Where injury is proximately caused by his service as an enrollee within an economic opportunity program either with or without negligence.

"(c) Where injury is not caused by the intoxication of the injured enrollee.

"(d) Where the injury is not intentionally self-inflicted."

[16]Section 4353 provides in pertinent part as follows: "Compensation shall be furnished to a disaster service worker for any injury suffered . . . in those cases where the following conditions concur:

"(a) Where, at the time of the injury the disaster service worker is performing services as a disaster service worker, and is acting within the course of his duties as a disaster service worker.

"(b) Where, at the time of the injury the disaster council with which the disaster service worker is registered is an accredited disaster council or the disaster service worker is an unregistered person impressed into service. . . .

"(c) Where the injury is proximately caused by his service as a disaster service worker, either with or without negligence.

"(d) Where the injury is not caused by the intoxication of the injured worker.

"(e) Where the injury is not intentionally self-inflicted."

693 [128 P.2d 529]: "Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it." We presume the legislative classification is valid and will sustain it "unless it is manifestly without support in reason." (*Western Indemnity Co.* v. *Pillsbury, supra*, 170 Cal. 686, 702 [151 P. 398].)

Generally speaking, an " '[e]mployee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed . . . ." (§ 3351.) However, the Legislature has excluded certain classes of persons from coverage under the Workmen's Compensation Act (§ 3352), and it has long been settled that such exclusions do not "make the law vulnerable as special legislation . . . provided the classification be based on some rational ground of differentiation." (*Western Indemnity Co.* v. *Pillsbury, supra,* 170 Cal. 686, 702.) By the same token, extending the coverage of the act to persons not within the definition of "employee," on terms different from those generally provided, does not violate the prohibitions of our Constitution if a reasonable basis for the distinctions may be found.

In 1946 the Legislature provided in chapter 10 of part 1 of division 4 of the Labor Code (Workmen's Compensation and Insurance) for the furnishing of compensation to disaster service workers and their dependents for injury or death "within or without the State arising out of and occurring in the course of his *activities* as a disaster service worker" (§ 4353, italics added). In 1965, the Legislature provided in chapter 9 for the furnishing of compensation to enrollees in economic opportunity programs and their dependents for injury or death "suffered within or without the state occurring in the course of his *duties* for a sponsoring agency within an economic opportunity program . . . ." (§ 4207.) In each instance the furnishing of compensation depends upon the concurrence of specified conditions which, except for an additional condition for disaster service workers (see § 4353, subd. (b); see fns. 15 and 16, *ante*), are substantially the same but are themselves, as applicant points out, in some respects different from the conditions for furnishing compensation to employees generally. It is obvious that these two groups—disaster service *workers* and *enrollees* in economic opportunity programs[17]—do not totally or clearly fit under the

---

[17]Significantly these italicized terms are used instead of the term "employees," and the phrases "in the course of his *activities*" (§ 4353, italics added) and "in the

foregoing definition of "employee" and that a great portion, if not all, of their members might be excluded from the Workmen's Compensation Act if special provision had not been made for them. We think it clear that the Legislature might have recognized this difference and might have reasonably found that these two groups did not fall within the customary category of employees or at least that the conditions under which they performed their duties were so far different from those involved in the normal employer-employee relationship as to justify different conditions for furnishing compensation.[18] ▮▮▮▮ Upon an examination of the entire legislative scheme, therefore, we cannot say that these two separate classifications are arbitrary.

▮▮▮▮ We, therefore, conclude that section 3600, subdivision (g) is constitutional, and that the Board did not err in concluding that it precludes an award of workmen's compensation benefits in this case.

The decision of the Board following reconsideration is affirmed.

Wright, C. J., McComb, J., Tobriner, J., and Burke, J., concurred.

**MOSK, J.**—I dissent.

In 1952 Justice Carter wrote for this court: " 'That there is a natural repugnancy to help a guilty party is no excuse for relieving industry of a liability and placing it on the worker or charity . . . . It is the character and nature of the assault which determines whether it arises out of his employment, not the culpability or the lack of culpability of the parties involved. It is the assault itself which arises out of the employment; and who initiates the altercation has no bearing on that question . . . .' " (*State Comp. Ins. Fund* v. *Ind. Acc. Com.* (1952) 38 Cal.2d 659, 669 [242 P.2d 311].) (Italics omitted.) This was good law then and its logic is inescapable today in applying the facts of this case to the provisions of the state Constitution and the underlying intent of workmen's compensation laws.

---

course of his *duties*" (§ 4207, italics added), instead of "in the course of the *employment*" (§ 3600, italics added).

[18]E.g., compare section 3600 (conditions essential to recovery, general provision) with section 4207 (conditions, economic opportunity program enrollees) and section 4353 (conditions, disaster service workers); section 4654 (temporary partial disability, general provision) with section 4364 (temporary partial disability, disaster service workers); section 4701 ($1,000 maximum burial benefit, general provision) with section 4214 ($600 maximum burial benefit, economic opportunity program enrollees) and section 4368 ($700 maximum burial benefit, disaster service workers).

The majority opinion cites with approval the Larson view: "The homely fact [is] that, long after a quarrel is over, it is often almost impossible to determine who really started it." (1 Larson, Workmen's Compensation Law (1968 ed.) § 11.15(c), p. 159.) Yet that is precisely what the Workmen's Compensation Appeals Board attempted here: to determine who really started the altercation. The test, pursuant to the Constitution, should have been merely: "Did the altercation arise out of and occur in the course of employment?" That query must be answered in the affirmative, and an award of compensation necessarily follows. Indeed, the findings of fact of the referee confirmed that the deceased "sustained an injury arising out of and occurring in the course of his employment."

There is no evidence that the victim, Mathews, or his assailant, Cedillo, knew each other or that their paths had ever crossed prior to the incident arising out of labor being performed at the Castaic Dam site in Los Angeles County. As part of his work in directing incoming trucks, Cedillo gave orders to Mathews and the latter apparently responded in a vehement and disagreeable manner. Whether Mathews, who struck no blow, nevertheless can be deemed the initial physical aggressor, is of no consequence, since the indisputable fact remains that the two participants in the altercation were present on the construction premises, became involved in a heated controversy and proceeded to act, all in connection with their employment. In that respect this case is factually stronger than compensable tragedies occurring as a result of grievances having their origin independent of the job. (E.g., *California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd. (Schick)* (1968) 68 Cal.2d 157 [65 Cal.Rptr. 155, 436 P.2d 67].)

The Court of Appeal saw the issue properly in *Litzmann* v. *Workmen's Comp. App. Bd.* (1968) 266 Cal.App.2d 203 [71 Cal.Rptr. 731]. There the referee found that the employee's injury occurred in the course of his employment "but that the injury arose out of an altercation in which applicant was the initial physical aggressor and, therefore, he was not entitled to an award." (*Id.* at p. 204.) The court found that the evidence did not sustain the finding that the applicant was the aggressor "and that, *even if it did*, compensation could not be denied on that ground." (Italics added; *id.* at p. 210.) The court adhered to the basic test of whether the injuries arose out of and in the course of the applicant's employment. This was the correct approach, for once a court concedes that an assault, malicious or otherwise, arises out of the employment for the nonaggressor, the same assault necessarily arises out of the employment for the aggressor. It is the assault which is related to the employment, and who initiates it has no bearing on the issue, unless we are to revert to common law culpability considerations. (See Horovitz, *Assaults and Horseplay Under Workmen's Compensation Laws* (1946) 41 Ill. L. Rev. 311, 346.)

Recognition of an aggressor defense is anachronistic and contrary to the unmistakable trend in the law. Larson points out: "The abolition of the aggressor defense is one of the most rapid doctrinal reversals in the volatile history of compensation law. Before 1947 the aggressor defense had the entire field to itself. Then New Hampshire, in 1947, and Massachusetts, in 1949, handed down the cogently reasoned opinions in *Newell* v. *Moreau* [94 N.H. 439 (55 A.2d 476)] and *Dillon's Case* [324 Mass. 102 (85 N.E. 2d 69)], flatly rejecting the entire concept of aggression as a defense. Although a few cases asserting the defense have subsequently appeared, the most impressive feature of the new trend is the number of major compensation jurisdictions that have deliberately abolished the defense in spite of earlier decisions supporting it. These jurisdictions include California, Michigan, Minnesota, New Jersey, and New York." (Fns. omitted; 1 Larson, *op. cit. supra*, p. 154.)[1]

The question then arises as to how Labor Code section 3600, subdivision (g), is to be interpreted. If it involves a weighing of the facts in order to ascertain whether the injured employee was at fault, then the code section clearly runs afoul of section 21 of article XX of the California Constitution. When the people adopted that constitutional amendment authorizing the Legislature to create "a complete system of workmen's compensation" they provided as the cornerstone of the complete system the principle that compensation be provided for workmen, and their dependents for death of the workman in the course of his employment, *irrespective of the fault of any party*. Hence, as Justice Carter wrote, "the charge of aggressor cannot be a defense, for it is nothing more than an assertion that the employee was at fault—was to blame—brought it on himself." (*State Comp. Ins. Fund* v. *Ind. Acc. Com., supra*, at p. 661.)

The history recited by the majority in support of their strained conclusion is helpful only if one ascribes to the Legislature some consistently strange design, circumlocution, or repeated inadvertence in drafting. As the majority point out, the earlier Roseberry Act referred to liability for compensation "without regard to negligence." Thus the Legislature was familiar with and knew how to utilize that expression when it accurately reflected the legislative intent. Having previously adopted legislation speak-

---

[1] The innovative decisions by Justice Kenison in New Hampshire and Chief Justice Qua in Massachusetts were quickly followed by others, including the following: *Commissioner of Taxation & Fin.* v. *Bronx Hospital* (1950) 276 App.Div. 708 [97 N.Y.S.2d 120]; *Brookhaven Steam Laundry* v. *Watts* (Miss. 1951) 55 So.2d 381, 394; *Myszkowski* v. *Wilson & Co.* (1952) 155 Neb. 714 [53 N.W.2d 203]; *Petro* v. *Martin Baking Co.* (1953) 239 Minn. 307 [58 N.W.2d 731]; and the particularly well reasoned decision in *Johnson* v. *Safreed* (1954) 224 Ark. 397 [273 S.W.2d 545, 547] (and numerous cases cited therein).

ing in terms of negligence, however, in presenting section 21 of article XX to the voters for approval the Legislature rephrased the provisions to call for a system of compensation "irrespective of the fault of either party." Then the Boynton Act, adopted after the effective date of the constitutional amendment, reverted back to the Roseberry Act expression of providing compensation "without regard to negligence." And finally, to complete this perplexing historical saga, those who proposed a further constitutional amendment in 1918 employed the phrase "irrespective of fault" once again. However academically intriguing this semantic mystery may be, the issue is not what the Legislature had in mind, but what the Constitution provides. The rule is clear that constitutional language must be read according to its expressed rather than possible intended meaning. (*Los Angeles Met. Transit Authority* v. *Public Util. Com.* (1963) 59 Cal.2d 863, 869 [31 Cal.Rptr. 463, 382 P.2d 583].)

In this case the position of the Board and the majority can be sustained only if the terms "irrespective of the fault of any party" and "without regard to negligence" are entirely synonymous. While concededly some judicial definitions of "fault" restrict its meaning to "negligence," lexicographers deem "fault" to be a broad generic term which includes the lesser word negligence but also many others, such as wilful misconduct, gross negligence, misbehavior, transgression, dereliction, offense, culpability, wrongdoing, deviation from rectitude, and in general "a failure to do what is right." (Webster's New Internat. Dict. (3d ed. 1961), p. 829.) *Compania Trasatlantica Espanola, S.A.* v. *Melendez Torres* (1st Cir. 1966) 358 F.2d 209, 213, discusses a statute which refers to "fault or negligence" and holds the terms do not mean the same; fault was found there to include a breach of obligation or warranty. (Also see *Lashley* v. *Koerber* (1945) 26 Cal.2d 83, 91 [156 P.2d 441]; *United Canneries* v. *Seelye* (1920) 48 Cal.App. 747, 751 [192 P. 341].) A number of code sections refer to "fault" and clearly are not limited to negligence. (E.g., Civ. Code, § 1689, subd. (b) (2); Com. Code, § 2613, and comment thereto.)

The majority resort to the *argumentum ad horrendum* if we were "to hold that section 21 of article XX prohibits the Legislature from taking into account the intentional wrongdoing of employer or employee in providing for compensation." They assert that doubt would be cast over the validity of subdivisions (d), (e), and (f) of Labor Code section 3600, as well as section 4551, which reduces the award by one-half if the injury results from the employee's serious and wilful misconduct, and section 4553, which increases the award by one-half if the injury is caused by the employer's serious and wilful misconduct, and also other sections providing for various increases and decreases in awards. I suggest that these fears are

groundless and that the point is irrelevant. Recovery in the event of intoxication, self-inflicted injury or suicide (Lab. Code, § 3600, subds. (d), (e), and (f)) can be prevented if the act was not work-related, or if the employment relationship is established, then limited by invoking the wilful misconduct statute. As to sections 4551 and 4553, I point out that nowhere in the constitutional authorization for legislative establishment of a workmen's compensation system is there reference to any specific *amount* of compensation to be awarded. Indeed, as we noted in our recent case of *State Dept. of Corrections* v. *Workmen's Comp. App. Bd.* (1971) 5 Cal.3d 885 [97 Cal.Rptr. 786, 489 P.2d 818], the injured employee is seldom, if ever, made whole by virtue of a compensation award. The amount to be given to the petitioner, and the percentage thereof to be provided by the employer, may be prescribed by the Legislature, The only constitutional mandate is that a system of compensation be provided and that an award cannot be withheld on the basis of fault. How much should be awarded in terms of dollars or percentages under specified circumstances is within the legislative prerogative.

Here there has been no exercise of the legislative prerogative to direct that the sum awarded an "initial aggressor" shall be ratably increased or reduced; there is a total prohibition against an award being made when the defense of "initial aggressor" is sustained. Yet an award in an appropriate amount, I submit, cannot be denied without violating section 21 of the article XX.

In supporting the Board amicus curiae cavalierly denigrate the expression "irrespective of fault" as a species of "catch-phrase" that has served variously as "a battle cry, a campaign slogan, a figure of speech, a shibboleth." In short, the position of the Board, the amicus curiae, and now the majority of this court, is that the constitutional provision is as meaningless as yesterday's political oratory; that the Legislature cannot be inhibited in passing statutes which deny compensation when the injured workman is found to be at fault. I cannot be that casual in application of our Constitution.

Justice Rutledge, while on the circuit court, wrote a landmark opinion which expresses the philosophy behind elimination of the physical aggressor defense. In *Hartford Accident & Indemnity Co.* v. *Cardillo* (1940) 112 F.2d 11, 17, footnote 17 [72 App.D.C. 52], he said: "Natural repulsion toward rewarding intentional misconduct accounts largely for the [problem], though it ignores the fact that one purpose of the statute is sustenance of the misbehaving employee's family during his disability and their dependence is not the less because the misconduct is his rather than another's." This

quotation is particularly apt in the instant case in which the workman is deceased and his dependent widow is the petitioner.

Then, writing of the concept which concerns itself not with whether the claimant was the aggressor, but with whether the dispute arose immediately over the work, Justice Rutledge said (at p. 17): "This view recognizes that work places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities are created by working together on the assembly line or in traffic. Others initiated outside the job are magnified to the breaking point by its compelled contacts. No worker is immune to these pressures and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent pressures. That it is not relevant to the immediate task, involves a lapse from duty, or contains an element of volition or illegality does not disconnect it from them nor nullify their causal effect in producing its injurious consequences. Any other view would reintroduce the conceptions of contributory fault, action in the line of duty, nonaccidental character of voluntary conduct, and independent, intervening cause as applied in tort law, which it was the purpose of the statute to discard." (Fn. omitted.) Of the same philosophical bent, though not expressed in a workmen's compensation case, was Justice Traynor's opinion for this court in *Carr* v. *Wm. C. Crowell Co.* (1946) 28 Cal.2d 652, 656 [171 P.2d 5].

I am convinced that *State Comp. Ins. Fund* v. *Ind. Acc. Com., supra,* is still sound law and that its concept of the constitutional provision "irrespective of fault" is binding upon us under the doctrine of stare decisis. That the Legislature may have reached a conflicting interpretation of the constitutional provision, as evidenced by its adoption of Labor Code section 3600, subdivision (g), is unfortunate but not controlling. "We cannot push back the limits of the Constitution merely to accommodate challenged legislation." (Warren, C. J., in *Trop* v. *Dulles* (1958) 356 U.S. 86, 104 [2 L. Ed.2d 630, 644, 78 S.Ct. 590].)

I would annul the decision of the Board and remand the matter for appropriate proceedings.

Peters, J., concurred.

Petitioner's application for a rehearing was denied March 30, 1972. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.