[No. C055711. Third Dist. Jan. 23, 2008.]

ROSEMARY VERGA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, UNITED AIRLINES
et al., Respondents.

COUNSEL

Roy C. Levin for Petitioner.

Mullen & Filippi and Ohnmar M. Shin for Respondents United Airlines and Gallagher Bassett Services, Inc.

No appearance for Respondent Workers' Compensation Appeals Board.

OPINION

**SCOTLAND, P. J.**—The question presented in this workers' compensation proceeding is whether the disdainful reactions of a supervisor and coworkers to an employee's mistreatment of them constitute "actual events of employment" for which the employee can obtain workers' compensation benefits for the psychological stress that the employee experiences because of those disdainful reactions to her inappropriate conduct.

The answer requires an interpretation of section 3208.3, subdivision (b)(1) of the Labor Code, which states: "In order to establish that a psychiatric injury is compensable, an employee shall demonstrate by a preponderance of the evidence that actual events of employment were predominant as to all causes combined of the psychiatric injury." (Further section references are to the Labor Code unless otherwise specified.)

The Workers' Compensation Appeals Board (the WCAB) concluded that Rosemary Verga was not entitled to compensation for psychiatric injury while employed by United Airlines. According to Verga, her psychiatric injury was the result of harassment and persecution by her supervisor and coworkers. However, the WCAB found "the true fact remains that [Verga] was not actually subject to harassment or persecution, she instead brought upon herself the disdain of her co-workers" because Verga was "a difficult person to get along with"; she was impolite, unpleasant, and coworkers "never knew

when [she] might get upset." The WCAB held: "That disdain is not an actual event of employment" within the meaning of the statute.

We issued a writ of review and shall now affirm the WCAB order. As we will explain, substantial evidence supports the WCAB's factual findings that Verga's supervisor and coworkers did not persecute or harass her; instead, it was Verga who caused the stressful work environment by being rude, inflexible, easily upset, and demeaning toward other employees. That Verga subjectively misperceived as harassment the disdainful reaction of her coworkers to Verga's mistreatment of them did not entitle her to workers' compensation benefits for psychiatric injury. This is so because in enacting section 3208.3, subdivision (b)(1), the Legislature disapproved a ruling permitting such benefits based on an employee's subjective misperception that the employment was stressful. In order to limit such claims for psychiatric injury, due to their proliferation and potential for abuse, the Legislature "establish[ed] a new and higher threshold of compensability for psychiatric injury" (§ 3208.3, subd. (c)) by requiring the claimant to demonstrate that "actual events of employment" were the "predominant" cause of the alleged psychiatric injury (§ 3208.3, subd. (b)(1)). This change in the statutory scheme constituted an intent to require the claimant to establish objective evidence of harassment, persecution, or other such basis for alleged psychiatric injury. Verga failed to do so. Rather, the evidence established that Verga was the predominant cause of her psychiatric injury because her inappropriate conduct toward coworkers created their disdain toward her. Although the workers' compensation system generally provides benefits regardless of the fault of any party, there are limits when an employee intentionally causes his or her own injury. To allow an employee to harass coworkers and, when they respond unfavorably, to claim a stress-related injury to the employee's psyche would increase, not reduce, workers' compensation claims and create the potential for abuse of the system. This would be contrary to the purpose of section 3208.3, subdivision (b)(1). In sum, the disdainful reactions of coworkers to Verga's abusive conduct toward them were neither "actual events of employment" nor the "predominant" cause of Verga's psychiatric injury within the meaning of the statute. The predominant cause of her injury was Verga herself, through her intentional abuse of her coworkers. Thus, she is not entitled to workers' compensation benefits.

## FACTS AND PROCEDURAL BACKGROUND

Verga applied to the WCAB for adjudication of her workers' compensation claim. She alleged she suffered an injury to her psyche in 2000, as the result

of abusive behavior by her supervisor while Verga was employed as a staff representative for United Airlines.[1]

After lengthy procedural delays, a hearing before a workers' compensation judge (WCJ) began on December 13, 2006.

Verga testified as follows:

She enjoyed her work in her prior position with United Airlines as a customer service representative. Her problems did not begin until she became a staff representative in human resources, working for Bill Allen. According to Verga, Allen did not treat her well. He would berate her in front of other employees and would delegate responsibilities to Verga but not give her the authority to execute her responsibilities, which caused others in the department to resist her directives.

Verga asked Allen to conduct a meeting on January 14, 2000, to talk to the staff about their challenging behavior. Her objective was to have Allen let the others know the extent of her authority; she expected him to be harsh and direct with the staff.

The meeting was far different than Verga expected. Allen distributed a document entitled Rules of the Road, which concerned employee interactions and included a topic on respect. When Verga retrieved a dictionary to obtain a definition of the term, Allen became upset. He was harsh with Verga and allowed others to "take jabs" at her and make negative comments, such as calling her a perfectionist. He did not permit her to respond to the criticisms until the end of the meeting, which lasted several hours. At that point, she was unable to do so because she was overwhelmed and reduced to tears.

According to Verga, her coworkers' comments lacked merit and were just personal attacks. She described the meeting as "the worst trial in the history of America . . . where you can sit there and be on trial and not allowed to defend yourself and not have representation to do that for you."

After the meeting, Verga began to experience frequent crying bouts and difficulty sleeping. According to her, she was demoted in March 2000, after she reported Allen to his boss.

In May 2000, Verga sought help from the employee assistance program and was treated by Dr. Jensen at United Airlines's medical department. He initially authorized a medical leave, but then determined that Verga could

---

[1] The employer's workers' compensation insurer denied the claim.

return to work in July. Verga went to see her own physician, Dr. Ho, who authorized a medical leave of absence. Verga has not returned to work at United Airlines since June 2000.

Other employees recalled the work environment and meeting differently than did Verga.

Allen, Verga's supervisor, testified as follows:

About three to four months after Allen hired her, Verga began to have problems meeting deadlines. She was rude to other employees and inflexible. Allen advised her that this would interfere with her ability to meet her goals.

On January 14, 2000, Allen called a regular staff meeting, which he expected to last longer than usual because he planned to set objectives for the year and to clear up any problems in the office. He began a discussion concerning United Airlines's Rules of the Road, and asked employees to comment on them. When some employees offered their definitions of the term "respect," Verga obtained a dictionary and demanded they look at the definition. Allen finally had to ask Verga to stop because she "was not letting people respond in a . . . respectful manner." At that point, Allen had everyone take turns speaking to ensure that everyone had a chance to be heard. The employees aired concerns regarding Verga and two men in the office. Allen gave Verga a chance to respond and did not yell at or berate her.

After the meeting, Verga's work declined and she refused to communicate with Allen. In March 2000, Allen changed her work assignment, but this was not a demotion. He observed that while Verga was on medical leave, those who filled in for her were able to meet the requisite deadlines and there was a noticeable improvement in the atmosphere of the department. After Verga left the job, Allen learned she had similar problems in her previous positions with United Airlines.

Employee Pamela Silvain testified. She confirmed that the office became less stressful after Verga's departure. Silvain no longer felt like she was "walking on eggshells." According to Silvain, while the employees were trying to discuss the Rules of the Road document at the meeting on January 14, 2000, the only way they were able to speak was if they interrupted Verga, who was agitated and "just wouldn't stop" yelling at them.

Various employees testified that they had never seen Verga mistreated by Allen, who did as much as he could to support her, even though Verga had mistreated them. For example, Debra Hilt stated that Verga did not respect other employees. Verga would tell them they were failures and give them

degrading feedback. Verga eventually isolated herself, and the other employees "became the enemy." Verga did not want to be a team player, as shown by the fact she did not assist the rest of the employees in preparing for an audit of the office. The work environment improved significantly after Verga left.

Employee Ana Maria Pena stated that Verga was not polite, not a team player, and not tactful, and that the office atmosphere was tense due to Verga's erratic and aggressive behavior. Pena referred to the feeling in the office as "doom and gloom" when Verga was present. Pena tried to counsel Verga about her lack of flexibility and tact, but the efforts were unsuccessful. At the meeting on January 14, 2000, employees tried to tell Verga that she did not respect them; but she was unwilling to listen to others' points of view and implied that they were "dumb." No one was trying to "lynch" Verga; they just wanted to alert her to the problem and obtain some relief. In fact, everyone stated they understood that Verga had huge responsibilities, but they simply could not do their jobs if she did not "carry through on [her] end of the bargain." According to Pena, after Verga went on medical leave, it was "[l]ike a huge burden was lifted off our shoulders."

Employee Ron Washington related that Verga tried to make the department "perfect" and would yell at them when she could not get her work done. She was controlling, aggressive, required things done her way, created tension in the office, and had an "attitude towards the staff." Verga was angry that outside clients would call other staff representatives in the department for assistance because the clients had trouble working with her. Washington recalled that during the meeting on January 14, 2000, Allen asked Verga how she thought the staff viewed her. Verga in turn asked the staff, "how do you guys view me," at which point the meeting "took a negative turn" because issues had been "building up over a daily basis" concerning her disrespectful method of communication. Washington stated he "should be the one out on a stress claim" because of the way Verga treated him.

Dr. Perry Segal, a qualified medical evaluator (QME), opined that Verga suffered from adjustment disorder with mixed anxiety and depressed mood, resulting from cumulative trauma caused by negative interactions with her coworkers and her supervisor, Bill Allen. Segal's opinion was based primarily on Verga's description of difficulties at work and her account of the meeting on January 14, 2000. Verga told Segal that Allen allowed coworkers to berate her for approximately five hours, during which she felt "scapegoated" and "beaten to tears."

Another QME, Edward Duncan, Ph.D., diagnosed Verga with an adjustment disorder and mild depressive symptoms, but opined she was not

psychiatrically disabled from working as of October 2000. Duncan observed that Verga adamantly believed her work stress stemmed from ill treatment she received from Allen and coworkers. However, her coworkers viewed the situation differently. They described Verga as very negative, rigid, stubborn, defensive, and abusive to the office staff. Verga had received similar complaints in the past. Her work records disclosed that since 1984, she had problems with her relations with coworkers and customers. Duncan observed: "There have been specific complaints regarding [Verga's] attitude on the job over the past 20 years or so. These complaints have been from numerous co-workers and supervisors indicating that Ms. Verga was not just targeted by selected individuals."

In Dr. Duncan's opinion, Verga's work conflicts were caused by her own inappropriate behaviors and actions; and a substantial portion of the stress she experienced was due to personnel actions and decisions that presumably were made in good faith. Therefore, Duncan opined that Verga did "not meet the criteria necessary for an industrial etiology."

The WCJ found that Verga did not sustain an injury to her psyche arising out of and occurring in the course of employment. Noting there was conflicting evidence regarding what had happened during Verga's employment, the WCJ found that Verga's testimony was not as credible as was the evidence presented by other employees of United Airlines. The WCJ discounted Verga's version of what occurred at the meeting on January 14, 2000, and found that Verga was hard to get along with and caused the job to be difficult and stressful.

The WCJ concluded that false perceptions of the working environment do not constitute actual events of employment. Hence, Verga failed to establish an "actual event of employment" was the predominant cause of her injury within the meaning of section 3208.3.

After Verga filed a petition for reconsideration, the WCJ submitted to the WCAB a report and recommendation clarifying the basis for the WCJ's decision. It explained that Verga believed she was entitled to compensation based on her honest perception of what happened at work, and on her doctor's medical evaluation based on Verga's misperception of events. The WCJ noted, however, that mental disabilities are compensable only when arising out of actual events of employment, not unfounded perceptions such as Verga's claim that she was harassed and persecuted. The WCJ found that Verga "was not actually subject to harassment or persecution, she instead brought upon herself the disdain of her co-workers. That disdain is not an actual event of employment." Accordingly, the WCJ concluded that because Verga did not sustain an injury to her psyche arising out of the course of her

employment, it was unnecessary to reach the issue of whether her injury resulted from a good faith personnel action.

The WCAB adopted the WCJ's decision and denied reconsideration.

## DISCUSSION

### I

In assessing Verga's request for relief, we apply the following standards of review. The WCAB's findings on questions of fact are conclusive where supported by substantial evidence. (§§ 5952, 5953; *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290 [135 Cal.Rptr.2d 665, 70 P.3d 1076] (hereafter *Department of Rehabilitation*).) However, the construction of labor statutes and their applicability to a given situation are matters of law subject to our independent review. (*Department of Rehabilitation, supra*, 30 Cal.4th at p. 1290; *Rex Club v. Workers' Comp. Appeals Bd.* (1997) 53 Cal.App.4th 1465, 1470–1471 [62 Cal.Rptr.2d 393].) Even so, the WCAB's statutory interpretation is entitled to great weight unless it is clearly erroneous. (*Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 515–516 [90 Cal.Rptr.2d 486].)

Substantial evidence supports the WCAB's factual findings that Verga's supervisor and coworkers did not persecute or harass her; instead, it was Verga who caused the conflict and then misperceived as harassment her coworkers' disdainful response to her mistreatment of them. Indeed, ample evidence showed Verga was rude, inflexible and easily upset, and caused stress to coworkers, who at the staff meeting on January 14, 2000, advised Verga of their dissatisfaction with her behavior.

Thus, we turn to the WCAB's legal conclusion that Verga was not entitled to workers' compensation benefits for psychiatric injury because being the subject of her coworkers' disdain in response to Verga's own inappropriate behavior was not an actual event of employment that predominately caused her psychiatric injury.

Verga contends that it does not matter whether the events of her employment occurred as she recalls or as found by the WCAB. Either way, she argues, they were actual events of employment that caused her stress and resulting psychological injury. In her view, the WCAB improperly introduced an element of fault into the no-fault workers' compensation system by finding that Verga cannot recover compensation because the workplace events that caused her psychological trauma were in response to her own bad behavior.

For reasons that follow, we agree with the WCAB that an employee cannot recover workers' compensation benefits under the circumstances of this case.

## II

■ Section 3208.3, which governs workers' compensation for psychiatric injuries, states in pertinent part: "In order to establish that a psychiatric injury is compensable, an employee shall demonstrate by a preponderance of the evidence that actual events of employment were predominant as to all causes combined of the psychiatric injury." (§ 3208.3, subd. (b)(1).) This means that benefits for a psychiatric injury may be awarded only when the employee establishes that industrial factors account for more than 50 percent of the employee's psychiatric injury. (*Pacific Gas & Electric Co. v. Workers' Comp. Appeals Bd.* (2004) 114 Cal.App.4th 1174, 1181 [8 Cal.Rptr.3d 467] (hereafter *Pacific Gas & Electric*).) And psychiatric injuries arising from nondiscriminatory, good faith personnel decisions do not qualify for compensation. (§ 3208.3, subd. (h).)

The question presented here is whether disdainful reactions of a supervisor and coworkers to an employee's mistreatment of them constitute "actual events of employment," within the meaning of section 3208.3, subdivision (h), for which the employee can obtain workers' compensation benefits for the psychological stress that she experiences because of those disdainful reactions to her own inappropriate conduct.

■ In construing a statute, a court's primary task is to ascertain the intent of the Legislature to effectuate the purpose of the law. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) This is accomplished by first looking to the words used in the statute, giving them their usual, ordinary import and according significance to every word, phrase and sentence in pursuance of the legislative purpose. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) "Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.]" (*Id.* at p. 1387.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (*Ibid.*)

■ Accordingly, in interpreting section 3208.3, subdivision (b)(1), we begin with its language, which "indicates that two conditions must be satisfied before a particular factor can support an award of benefits under [that section]. First, the factor must be an 'event'; i.e., it must be 'something that takes place' [citation] in the employment relationship. Second, the event

must be 'of employment'; i.e., it must arise out of an employee's working relationship with his or her employer." (*Pacific Gas & Electric, supra,* 114 Cal.App.4th at p. 1181.)

The phrase "actual events of employment" does not provide clear guidance because it is "susceptible of many meanings." (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 2007), § 4.02[3][b], p. 4-22.) Thus, it must be considered in light of the intent of the Legislature in enacting section 3208.3, subdivision (b)(1), which was "passed in 'response to increased public concern about the high cost of workers' compensation coverage, limited benefits for injured workers, suspected fraud and widespread abuses in the system, and particularly the proliferation of workers' compensation cases with claims of psychiatric injuries.' [Citation.]" (*City of Oakland v. Workers' Comp. Appeals Bd.* (2002) 99 Cal.App.4th 261, 265 [120 Cal.Rptr.2d 873].)

The intent of the statute was "to establish a new and higher threshold of compensability for psychiatric injury" (§ 3208.3, subd. (c)) so that such requests will "be evaluated strictly" (*Pacific Gas & Electric, supra,* 114 Cal.App.4th at p. 1181) in order to "*limit* claims for psychiatric benefits due to their proliferation and their potential for fraud and abuse." (*Id.* at p. 1182, original italics.)

Interpreting the "actual events of employment" language of section 3208.3, subdivision (b)(1) in light of the intent of the legislation, *Pacific Gas & Electric* held the statute precludes an award of workers' compensation for an employee's generalized anxiety over continued employment in a company struggling to survive during difficult economic times. Such "broad societal events or trends" are not events that arise out of the employment relationship within the meaning of section 3208.3, subdivision (b)(1). (*Pacific Gas & Electric, supra,* 114 Cal.App.4th at pp. 1181, 1182.) Otherwise, companies experiencing hard times would be subjected "to virtually unlimited liability" to employees stressed by the possibility that the company will not survive—a result that would "contravene the Legislature's express public policy goal of reducing the cost to the workers' compensation system by reducing the amount of compensable psychiatric injuries." (*Id.* at p. 1182.) Similarly, an employee's concern over the future of his retirement funds or the value of his company stock is "not [based on an actual event of employment] that could validly support an award of benefits for psychiatric injury." (*Id.* at p. 1183.) However, an employee's transfer to a new department because of corporate downsizing, where the employee is subjected to "confrontations with angry, threatening or deceitful customers packed in large numbers in a confining small office caus[ing] him specific and identifiable work-related stress" is "a direct consequence of [the] new work assignment, an event of his particular

employment, and a compensable cause of his psychic injury [if it is the predominant cause of the injury]." (*Id.* at p. 1183.)

With this background in mind, we turn to how the "actual events of employment" language of section 3208.3, subdivision (b)(1) should be interpreted as to Verga's claim for workers' compensation benefits based on alleged abusive behavior of her supervisor and coworkers that caused her psychiatric injury.

Prior to enactment of the statute, this court held in *Albertson's, Inc. v. Workers' Comp. Appeals Bd.* (1982) 131 Cal.App.3d 308 [182 Cal.Rptr. 304] (hereafter *Albertson's*) that an employee's claim of a cumulative injury to her psyche "may be founded upon an honest misperception of job harassment which interacts with a preexisting psychiatric condition so as to cause job stress." (*Id.* at p. 310.) Thus, an employee was entitled to workers' compensation benefits if the employee suffered a psychiatric injury based on a *subjective misperception* that his or her employment was stressful. (*Id.* at pp. 314–315.) "All that [was] required [was] the employment be one of the contributing causes without which the injury would not have occurred. [Citation.]" (*Id.* at p. 316.)

Section 3208.3, subdivision (b)(1) "was intended to overrule [*Albertson's*]" (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, § 4.02[3][b], p. 4-22) by imposing "more stringent requirements for [psychological injuries] than the subjective standard set forth in [*Albertson's*]." (*Save Mart Stores v. Workers' Comp. Appeals Bd.* (1992) 3 Cal.App.4th 720, 724, fn. 3 [4 Cal.Rptr.2d 597].)

█ Thus, for claims like those tendered in *Albertson's* and in this case, we agree with a leading treatise on workers' compensation law that the "actual events of employment" language added by section 3208.3, subdivision (b)(1) "can be interpreted" as requiring the employee to establish "objective evidence of harassment, persecution, or other basis for the alleged psychiatric injury." (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, § 4.02[3][b], p. 4-22.) That interpretation, which we adopt, is the one most consistent with the purpose of the statute, and is the interpretation applied by the WCAB in this case. (See *Boehm & Associates v. Workers' Comp. Appeals Bd., supra,* 76 Cal.App.4th at pp. 515–516 [the WCAB's statutory interpretation is entitled to great weight].)

The WCAB found there was no objective evidence that Verga's supervisor and coworkers harassed and persecuted her; thus, because there were no such actual events of employment that were predominant causes of her psychiatric injury, she was not entitled to workers' compensation benefits for that injury.

Conceding that the law no longer allows workers' compensation for a claim of psychiatric injury based on the claimant's "honest misperception of the events of the workplace," Verga nonetheless argues the WCAB's finding that she was subject to the disdain of her coworkers is objective evidence of her psychiatric injury when considered together with medical evidence that the disdain caused her to suffer such injury. In her view, because workers' compensation is a no-fault system, it does not matter that it was her own conduct that instigated her coworkers' disdain.

However, the evidence does not support Verga's claim that her coworkers' "disdain" caused her psychiatric disability, let alone that it was the predominant cause of such injury. Dr. Segal's view of the cause of Verga's injury was based on her version of the abuse and persecution to which she allegedly was subjected by coworkers. But the WCAB found that such abuse and persecution did *not* occur. In Dr. Duncan's view, the predominant cause of Verga's psychiatric injury was her own behavior, as well as legitimate personnel actions. Neither doctor opined that the predominant cause of Verga's injury was the mere disdain of her coworkers.

Verga's position that she should get workers' compensation for work-related stress because she *perceived* her fellow employees' *disdain* as unusually stressful and persecutory events, although they objectively were not, resurrects the subjective standard of *Albertson's, supra*, 131 Cal.App.3d 308. This is contrary to the Legislature's intent in enacting section 3208.3, subdivision (b)(1).

It is true that as a general rule, issues of compensation for injured workers "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.)

However, as we already have pointed out, section 3208.3, subdivision (b)(1) reflects the Legislature's intent to establish a new and higher threshold of compensability for psychiatric injury. (§ 3208.3, subd. (c).) "[T]he language and legislative history of section 3208.3 instruct that the Legislature's public policy goals should be considered when determining whether an award of benefits is warranted. The Legislature made quite clear that it intended to *limit* claims for psychiatric benefits due to their proliferation and their potential for fraud and abuse. Therefore, any interpretation of the section that would lead to more or broader claims should be examined closely to avoid violating express legislative intent. [Citation.]" (*Pacific Gas & Electric, supra*, 114 Cal.App.4th at p. 1182, original italics.)

Interpreting section 3208.3 to allow compensation under the circumstances of this case would increase the number of stress claims, rather than reduce

them, and would increase the potential for abuse. An employee, such as Verga, could harass her fellow employees and, when they respond unfavorably, the employee who instigated the harassment could claim a stress-related injury to her psyche. This would be contrary to the Legislature's intent in enacting the statute.

■    Verga correctly asserts that California employers are liable for compensation to employees who are injured or disabled in the course and scope of their employment "irrespective of the fault of any party." (Cal. Const., art. XIV, § 4.) However, there are limits on compensation where employees intentionally cause their own injuries. California's no-fault workers' compensation system is intended to permit recovery when an employee's own *negligence* caused his or her injury; it does not prohibit the Legislature from eliminating awards based on the employee's willful wrongdoing or misconduct. (*Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 728, 734 [100 Cal.Rptr. 301, 493 P.2d 1165] (hereafter *Mathews*).) For example, workers' compensation benefits are precluded if the employee is injured in an altercation where the employee is the initial physical aggressor, where the employee's injury is caused by the employee's intoxication or substance abuse, or where the employee's injury is intentionally self-inflicted. (§ 3600, subd. (a)(4), (5), (7); *Mathews, supra,* 6 Cal.3d at pp. 727–728; *Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 538 [94 Cal.Rptr.2d 186].)

A logical extension of the policy concerns highlighted in section 3208.3 and the exclusions in section 3600 dictates that workers' compensation benefits are not available where an employee engages in harassing and demeaning behavior in the workplace, causing others to respond in a way the employee subjectively finds offensive and psychologically injurious. In such circumstances, the predominant cause of the employee's psychiatric injuries is not an actual event of employment within the meaning of the statutory scheme; the predominant cause is the employee's intentional abuse of coworkers.

■    In sum, the evidence established that Verga had a very low frustration level and abused her coworkers when they did not meet her expectations. Although her coworkers reacted with disdain in their efforts to change Verga's behavior, their disdain was relatively benign. Verga was the aggressor, and she created the negative work atmosphere that she asserts caused her psychological injuries. Allen and Pena attempted to counsel Verga that her rudeness and inflexibility was counterproductive; but she chose to ignore their advice and continued to belittle her coworkers. She willfully demeaned her fellow employees.

In light of the legislative intent in enacting section 3208.3, subdivision (b)(1), the disdainful reactions of coworkers to Verga's abusive conduct were neither "actual events of employment" nor the "predominant cause" of her psychological injuries within the meaning of the statute.

## DISPOSITION

The WCAB's order denying compensation is affirmed. The parties shall bear their own costs on appeal.

Sims, J., and Nicholson, J., concurred.

On January 25, 2008, the opinion was modified to read as printed above.