# IN THE SUPREME COURT OF CALIFORNIA

HECTOR CASTELLANOS et al.,
Plaintiffs and Respondents,

v.

STATE OF CALIFORNIA et al.,
Defendants and Appellants;
PROTECT APP-BASED DRIVERS AND SERVICES et al.,
Interveners and Appellants.

S279622

First Appellate District, Division Four
A163655

Alameda County Superior Court
RG21088725

July 25, 2024

Justice Liu authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Kruger, Groban, Jenkins, and Evans concurred.

CASTELLANOS v. STATE OF CALIFORNIA

S279622

Opinion of the Court by Liu, J.

This case concerns Business and Professions Code section 7451, which was enacted by the voters through Proposition 22 (Gen. Elec. (Nov. 3, 2020)), the Protect App-Based Drivers and Services Act (Proposition 22) (Bus. & Prof. Code, §§ 7448–7467; all undesignated statutory references are to this code). Under section 7451, a driver for an app-based transportation or delivery company, such as Uber Technologies, Inc. (Uber), Lyft, Inc. (Lyft), or DoorDash, Inc., is an independent contractor and not an employee of the company as long as several conditions are met. As a result of section 7451, app-based drivers are not covered by California workers' compensation laws, which generally apply to employees and not to independent contractors.

Plaintiffs Hector Castellanos, Joseph Delgado, Saori Okawa, Michael Robinson, Service Employees International Union California State Council, and Service Employees International Union assert that section 7451 conflicts with article XIV, section 4 of the California Constitution, which vests the Legislature "with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation." (Cal. Const., art. XIV, § 4; all undesignated article references are to the California Constitution.) They further contend that because section 7465 and article II, section 10, subdivision (c) (article II, section 10(c)) together operate to require voter approval of any

legislation amending section 7451, those provisions restrict the Legislature's "unlimited" power to govern workers' compensation under the terms of article XIV, section 4. Interveners Protect App-Based Drivers and Services, Davis White, and Keith Yandell acknowledge that section 7465 and article II, section 10(c) would restrict the Legislature's power to restore app-based drivers' eligibility for workers' compensation, but they see no inconsistency between this effect of Proposition 22 and article XIV, section 4. The Attorney General contends that although section 7465 and article II, section 10(c) may conflict with article XIV, section 4, those provisions are not before us. According to the Attorney General, the sole provision at issue in this case, section 7451, does not itself conflict with article XIV, section 4 because the latter provision does not assign the Legislature sole authority, to the exclusion of the initiative power, to govern workers' compensation.

We agree with the Attorney General that section 7451 does not conflict with article XIV, section 4 because the latter provision does not preclude the electorate from exercising its initiative power to legislate on matters affecting workers' compensation. Whether the operation of section 7465 and article II, section 10(c) improperly constrains the Legislature's article XIV, section 4 authority to enact future legislation is not presented here, and we express no view on that question.

## I.

Article XIV, section 4 provides in relevant part: "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation, and in that behalf to create and enforce

a liability on the part of any or all persons to compensate any or all of their workers for injury or disability . . . ."  A "complete system of workers' compensation" includes, among other things, "adequate provisions for the comfort, health and safety and general welfare of any and all workers," "full provision for securing safety in places of employment," and "full provision for adequate insurance coverage against liability to pay or furnish compensation."  (*Ibid*.)  "[A]ll of which matters are expressly declared to be the social public policy of this State."  (*Ibid*.)

"The right to workers' compensation benefits is 'wholly statutory,'" "exclusive of all other statutory and common law remedies, and substitutes a new system of rights and obligations for the common law rules governing liability of employers for injuries to their employees."  (*Graczyk v. Workers' Comp. Appeals Bd*. (1986) 184 Cal.App.3d 997, 1002, 1003.)  The workers' compensation statutes are based on the theory that the common law remedy for work injuries "involves intolerable delay and great economic waste, gives inadequate relief for loss and suffering, operates unequally as between different individuals in like circumstances, and . . . is inequitable and unsuited to the conditions of modern industry."  (*Western Indem. Co. v. Pillsbury* (1915) 170 Cal. 686, 693 (*Western Indemnity*).)

In 2019, the Legislature enacted Assembly Bill No. 5 (2019–2020 Reg. Sess.) (Assembly Bill 5) to address "[t]he misclassification of workers as independent contractors," which it identified as "a significant factor in the erosion of the middle class and the rise in income inequality."  (Stats. 2019, ch. 296, § 1, subd. (c).)  The Legislature sought to ensure that misclassified workers "have the basic rights and protections they deserve under the law, including a minimum wage, workers' compensation if they are injured on the job,

unemployment insurance, paid sick leave, and paid family leave." (Stats. 2019, ch. 296, § 1, subd. (e).) To achieve this aim, Assembly Bill 5 codified the "ABC test" set forth in *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903. (Stats. 2019, ch. 296, § 1.) Under that test, a worker is an independent contractor only if the hiring entity establishes: "(A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of the work and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." (*Dynamex*, at pp. 916–917; see Lab. Code, § 2775, subd. (b)(1).)

Assembly Bill 5 took effect in January 2020. (Stats. 2019, ch. 296, § 2.) In October 2020, the Court of Appeal in *People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 273, prohibited Uber and Lyft from misclassifying their drivers as independent contractors under Assembly Bill 5. The court said "we have little doubt the Legislature contemplated that those who drive for Uber and Lyft would be treated as employees" under Assembly Bill 5. (*Uber Technologies*, at p. 297.)

In November 2020, Protect App-Based Drivers and Services supported Davis White and Keith Yandell in placing Proposition 22 on the general election ballot. Proposition 22 states that its purposes are to "protect the basic legal right of Californians to choose to work as independent contractors with rideshare and delivery network companies," "protect the individual right of every app-based rideshare and delivery driver to have the flexibility to set their own hours for when,

where, and how they work," and "require rideshare and delivery network companies to offer new protections and benefits for app-based rideshare and delivery drivers, including minimum compensation levels, insurance to cover on-the-job injuries, automobile accident insurance, health care subsidies for qualifying drivers, protection against harassment and discrimination, and mandatory contractual rights and appeal processes." (§ 7450, subds. (a), (b) & (c).)  Proposition 22 passed with the support of 58.6 percent of the voters and enacted sections 7448 to 7467 of the Business and Professions Code.

Section 7451 is the focus of this appeal.  It provides: "Notwithstanding any other provision of law, including, but not limited to, the Labor Code, the Unemployment Insurance Code, and any orders, regulations, or opinions of the Department of Industrial Relations or any board, division, or commission within the Department of Industrial Relations, an app-based driver is an independent contractor and not an employee or agent with respect to the app-based driver's relationship with a network company if the following conditions are met:  [¶] (a) The network company does not unilaterally prescribe specific dates, times of day, or a minimum number of hours during which the app-based driver must be logged into the network company's online-enabled application or platform.   [¶] (b) The network company does not require the app-based driver to accept any specific rideshare service or delivery service request as a condition of maintaining access to the network company's online-enabled application or platform.   [¶] (c) The network company does not restrict the app-based driver from performing rideshare services or delivery services through other network companies except during engaged time.   [¶] (d) The network

company does not restrict the app-based driver from working in any other lawful occupation or business." (§ 7451.)

The statute defines a " '[n]etwork company' " as a business entity that "maintains an online-enabled application or platform used to facilitate delivery [or transportation] services within the State of California on an on-demand basis . . . ." (§ 7463, subds. (*l*), (f); see *id.*, subd. (p).) Network companies are required to provide app-based drivers certain benefits and protections, including "a guaranteed minimum level of compensation for app-based drivers that cannot be reduced" (§ 7453, subd. (a)), "a quarterly health care subsidy to qualifying app-based drivers" (§ 7454, subd. (a)), and "occupational accident insurance to cover medical expenses and lost income resulting from injuries suffered while the app-based driver is online" (§ 7455, subd. (a)).

Section 7465 specifies the procedure for amending Proposition 22: "After the effective date of this chapter, the Legislature may amend this chapter by a statute passed in each house of the Legislature by rollcall vote entered into the journal, seven-eighths of the membership concurring, provided that the statute is consistent with, and furthers the purpose of, this chapter." (§ 7465, subd. (a).) "Any statute that amends Section 7451 does not further the purposes of this chapter." (§ 7465, subd. (c)(2).)

Section 7467 states that "the provisions of this chapter are severable. If any portion, section, subdivision, paragraph, clause, sentence, phrase, word, or application of this chapter is for any reason held to be invalid by a decision of any court of competent jurisdiction, that decision shall not affect the validity of the remaining portions of this chapter." (§ 7467, subd. (a).)

But "if any portion, section, subdivision, paragraph, clause, sentence, phrase, word, or application of Section 7451 . . . is for any reason held to be invalid by a decision of any court of competent jurisdiction, that decision shall apply to the entirety of the remaining provisions of this chapter, and no provision of this chapter shall be deemed valid or given force of law." (§ 7467, subd. (b).)

In February 2021, plaintiffs filed a petition for writ of mandate in Alameda County Superior Court, naming the State of California and Katie Hagen, Director of the Department of Industrial Relations, as defendants. By stipulation of the parties, the trial court granted interveners leave to oppose the petition as real parties in interest. The petition alleged that "Proposition 22 conflicts with article XIV, section 4, by purporting to entirely remove app-based drivers from the 'complete system of worker's compensation' the Legislature has extended to them and to limit the authority of the Legislature to extend such worker's compensation benefits to app-based drivers in the future." Plaintiffs further contended that "the entirety of Proposition 22 must be invalidated" because section 7451 is not severable. Plaintiffs also argued that other provisions of Proposition 22 not before us in this appeal are invalid.

The trial court found Proposition 22 "constitutionally problematic" because under article II, section 10(c), "the Legislature may not act to amend or repeal an initiative statute without a subsequent vote of the people." Although the court concluded that the people have authority to enact workers' compensation laws through the initiative power, the court characterized section 7451 as "an unconstitutional continuing limitation on the Legislature's power to exercise its plenary

power to determine what workers must be covered or not covered by the worker's compensation system." The court explained, "[I]f the People wish to use their initiative power to restrict or qualify a 'plenary' and 'unlimited' power granted to the Legislature, they must first do so by initiative constitutional amendment, not by initiative statute." Given that section 7451 is not severable, the court held Proposition 22 invalid in its entirety. The court also held Proposition 22 unconstitutional on other grounds not at issue here.

The Attorney General and interveners appealed, and a divided Court of Appeal reversed. The court first concluded that under article XIV, section 4, the voters and the Legislature "jointly and severally have authority to create a workers' compensation system." (*Castellanos v. State* (2023) 89 Cal.App.5th 131, 150 (*Castellanos*).) Relying on *Independent Energy Producers Association v. McPherson* (2006) 38 Cal.4th 1020 (*McPherson*), the court reasoned that article XIV, section 4 does not "require every worker to be covered by workers' compensation." (*Castellanos*, at p. 155.) Observing that "courts must liberally construe the initiative power and resolve doubts in favor of the use of the initiative wherever reasonable," the Court of Appeal held that Proposition 22 does not conflict with article XIV, section 4. (*Castellanos*, at p. 150; see *id.* at p. 157.) The court affirmed the trial court's judgment insofar as it invalidated severable provisions of Proposition 22 — section 7465, subdivisions (c)(3) and (c)(4) — which are not before us in the present matter. (*Castellanos*, at pp. 163–177.)

Justice Streeter disagreed with the Court of Appeal's conclusion that Proposition 22 does not conflict with article XIV, section 4. He explained that Proposition 22 "constitutes a sub rosa attempt to amend the Constitution in the guise of statutory

change" and "presents a direct conflict between the voter electors' power to adopt initiative statutes and the Legislature's power under article XIV, section 4." (*Castellanos*, *supra*, 89 Cal.App.5th at p. 178 (conc. & dis. opn. of Streeter, J.).) "[O]n this record," he concluded, "we must resolve that conflict in favor of the Legislature." (*Ibid.*)

Plaintiffs petitioned for our review. We granted the petition and later limited the issue to be argued and briefed as follows: "Does Business and Professions Code section 7451, which was enacted by Proposition 22 (the 'Protect App-Based Drivers and Services Act'), conflict with article XIV, section 4 of the California Constitution and therefore require that Proposition 22, by its own terms, be deemed invalid in its entirety?"

## II.

In addressing this question, we begin by examining whether the Legislature's plenary power under article XIV, section 4 to legislate on workers' compensation is exclusive, or whether the people through the initiative power may also legislate on matters affecting workers' compensation by enacting section 7451.

## A.

Plaintiffs assert that the phrase "unlimited by any provision of this Constitution" (the "unlimited" clause) in article XIV, section 4 prohibits the initiative statute here. According to plaintiffs, if "an initiative statute can remove entire classes of workers from the complete workers' compensation system established by the Legislature . . . then the Legislature's plenary power is not 'unlimited.'" They ask us to invalidate section 7451 on that basis.

Our analysis is guided by *McPherson*, *supra*, 38 Cal.4th 1020, where we examined the only other provision of the California Constitution that expressly references the Legislature's plenary power, unlimited by any other constitutional provision, to take a specified action. That provision is article XII, section 5, which states: "The Legislature has plenary power, unlimited by the other provisions of this constitution but consistent with this article, to confer additional authority and jurisdiction upon the [Public Utilities Commission] . . . ." We held that article XII, section 5 does not "preclude[] the use of the initiative process to enact statutes conferring additional authority upon the [commission]." (*McPherson*, at p. 1025.) In other words, the Legislature's power under article XII, section 5 is not exclusive of the people's initiative power, notwithstanding the "unlimited" clause.

As *McPherson* observed, the initiative power is recognized in article IV, section 1 of the California Constitution, which states: "The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum." We summarized the history of this provision as follows: " 'The amendment of the California Constitution in 1911 to provide for the initiative and referendum signifies one of the outstanding achievements of the progressive movement of the early 1900's. Drafted in light of the theory that all power of government ultimately resides in the people, the amendment speaks of the initiative and referendum, not as a right granted the people, but as a power reserved by them. Declaring it "the duty of the courts to jealously guard the right of the people" [citation], the courts have described the initiative and referendum as articulating

"one of the most precious rights of our democratic process" [citation]. "[I]t has long been our judicial policy to apply a liberal construction to this power whenever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it." ' " (*McPherson*, *supra*, 38 Cal.4th at p. 1032, quoting *Associated Home Builders of the Greater Eastbay, Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591 (*Associated Home Builders*).)

Mindful of these principles, this court in *McPherson* rejected the view that article XII, section 5 conferred exclusive power on the Legislature to expand the Public Utilities Commission's (PUC) authority or jurisdiction. (*McPherson*, *supra*, 38 Cal.4th at p. 1032.) Proponents of the initiative statute there argued that the phrase " 'unlimited by the other provisions of this constitution' " in article XII, section 5 could not be read literally because doing so "logically would signify that a statute passed by the Legislature pursuant to article XII, section 5 would not be subject to *any* provision of the California Constitution, including, for example, the provision authorizing the Governor to veto a bill approved by the Legislature. (Cal. Const., art. IV, § 10.)" (*McPherson*, at p. 1036.) We agreed that the "unlimited" clause was "not unambiguous" and could not "reasonably be interpreted *only* as having the effect of precluding the people's exercise of their reserved initiative power." (*Ibid.*) We then consulted the background of article XII, section 5 and observed that it was approved at the same 1911 election where voters also approved article IV, section 1 establishing the initiative power. (*McPherson*, at pp. 1040–1041.) Given this timing, we found it "most improbable" that the voters intended, "without any direct or explicit statement to

this effect, to *limit* the use of the initiative power" through article XII, section 5.  (*McPherson*, at p. 1042.)

Relying on *McPherson*, the Court of Appeal reasoned that "article XIV, section 4's 'unlimited' clause cannot mean that workers' compensation laws are exempt from every other aspect of the Constitution" and that "it is ambiguous as to which aspects of the Constitution continue to apply and which do not." (*Castellanos*, *supra*, 89 Cal.App.5th at p. 150.)  Although Proposition 22 differs in some respects from the initiative statute at issue in *McPherson*, we agree with the Court of Appeal that *McPherson* is instructive when interpreting the "nearly identical" "unlimited" clause of article XIV, section 4. (*Castellanos*, at p. 150.)

Plaintiffs attempt to distinguish article XIV, section 4's "unlimited" clause from the provision at issue in *McPherson* on several grounds.  First, plaintiffs point out that unlike article XII, section 5, which was enacted the same year as the initiative power, the "unlimited" clause was added to article XIV, section 4 in 1918, seven years after the initiative power was added to the Constitution in 1911.  In light of this chronology, plaintiffs contend the "unlimited" clause of article XIV, section 4 "necessarily encompassed" the existing initiative power.  But this timing does not resolve article XIV, section 4's ambiguity because it provides no basis to single out the initiative power from other constitutional checks on the Legislature's power such as the Governor's veto power.  In any event, we agree with the Court of Appeal that it seems " 'most improbable' that the voters in 1918 — seven years after they 'approved a far-reaching measure incorporating a broad initiative power as part of the California Constitution' — would have intended, 'without any direct or explicit statement to this effect, to *limit* the use of the

initiative power by virtue of the language' in article XIV, section 4." (*Castellanos*, *supra*, 89 Cal.App.5th at pp. 151–152, quoting *McPherson*, *supra*, 38 Cal.4th at p. 1042.)

Plaintiffs respond that "[e]ven if the 1918 voters did not have the initiative power in mind," the "broad and comprehensive" language of the "unlimited" clause supports their view that the clause limits the initiative power. But even plaintiffs do not endorse a literal reading of the "unlimited" clause such that the Legislature would be entirely free of constitutional checks or constraints in the area of workers' compensation. The clause requires interpretation, and without a specific indication that the 1918 voters who enacted the clause meant to limit the initiative power, it is " 'our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled.' " (*Associated Home Builders*, *supra*, 18 Cal.3d at p. 591.)

Next, plaintiffs assert that the "unlimited" clause here is not ambiguous because article XIV, section 4 directs the Legislature to enact "appropriate legislation" to administer the workers' compensation system. They contend that "the potential ambiguity about the veto power in *McPherson* arose only because the constitutional provision at issue there did not specify how the Legislature could exercise its 'unlimited' authority." Because "[l]egislation is adopted only when a bill is 'bicamerally enacted and presented to the head of the executive branch for approval or veto,' " plaintiffs argue, the phrase "appropriate legislation" makes clear that article XIV, section 4's "unlimited" clause applies only to the initiative power and not to other constitutional checks on the legislative power.

Like the Court of Appeal, we believe the phrase "by appropriate legislation" in article XIV, section 4 "does not change the analysis." (*Castellanos*, *supra*, 89 Cal.App.5th at p. 153.) It seems unlikely that the term "appropriate" was intended to mean that a bill has been bicamerally enacted and presented to the Governor. "Without following those procedures, no bill the Legislature passes is binding on anyone. It is not law at all . . . ." (*Id.* at p. 193 (conc. & dis. opn. of Streeter, J.).) Thus, if the authors of article XIV, section 4 had intended to specify that workers' compensation statutes must comply with constitutional checks on legislative power, they could have simply used the word "legislation," and the additional word "appropriate" would be surplusage. Moreover, plaintiffs' definition of "appropriate legislation" as legislation that has been bicamerally enacted and presented to the Governor does not account for legislation that amends an initiative statute and must be approved by the voters under article II, section 10(c). In other words, under our state Constitution, just as "legislation" ordinarily means a bill that has been presented to the Governor, "legislation" amending an initiative statute is a bill that has been approved by the voters unless the initiative provides otherwise. Plaintiffs' definition still requires us to "choos[e] which constitutional provisions would apply and which would not. It is not clear why the veto power and the initiative power would fall on different sides of that line." (*Castellanos*, at p. 153.)

In sum, guided by *McPherson*'s reasoning, we conclude that the "unlimited" clause is ambiguous and that there is no textual or historical basis to construe it to apply solely to the initiative power.

## B.

To discern the meaning of the "unlimited" clause, the Court of Appeal consulted the ballot materials from the 1918 election at which an amendment to former article XX, section 21 added the "unlimited" clause and enacted what is now article XIV, section 4. In those materials, the Court of Appeal found no evidence that the "voters intended to free the Legislature [from the initiative power] when enacting workers' compensation laws." (*Castellanos*, *supra*, 89 Cal.App.5th at p. 151.) The court agreed with our determination in *Mathews v. Workmen's Compensation Appeals Board* (1972) 6 Cal.3d 719, 734–735 (*Mathews*) that the 1918 amendment served " 'the sole purpose of removing all doubts as to the constitutionality of the then existing workmen's compensation statutes.' " (*Castellanos*, at p. 151; see *Mathews*, at p. 732, fn. 9.)

A review of the historical background of the 1918 amendment confirms our conclusion in *Mathews*. In 1911, the Roseberry Act (Stats. 1911, ch. 399, § 1, p. 796) established a voluntary system of workers' compensation. (*Mathews*, *supra*, 6 Cal.3d at p. 729.) One month later, the voters approved article XX, section 21 (now article XIV, § 4), which provided in relevant part, " 'The Legislature may by appropriate legislation create and enforce a liability on the part of all employers to compensate their employees for any injury incurred by the said employees in the course of their employment irrespective of the fault of either party.' " (*Mathews*, at p. 730, italics omitted, quoting former art. XX, § 21.) "Because few employers had chosen coverage under the voluntary plan established by the Roseberry Act, in 1913 the Legislature exercised the power conferred upon it by section 21 of article XX and enacted a compulsory scheme of workmen's compensation" through what was popularly known as the

Boynton Act (Stats. 1913, ch. 176, § 1, p. 279). (*Mathews*, at p. 730.) The Boynton Act "substitute[d] a new system of rights and obligations for the common-law rules governing the liability of employers for injuries to their workmen. . . . In place of the old action, in which the employer was liable only if he, or some one representing him, had been guilty of negligence or misconduct, the new law impose[d] upon the employer a liability for any accidental injuries to his employees arising out of the employment . . . ." (*Western Indemnity*, *supra*, 170 Cal. at p. 692.)

Between 1913 and 1918, the Boynton Act was challenged on multiple constitutional grounds. (See, e.g., *Western Indemnity*, *supra*, 170 Cal. 686; *Western Metal Supply Co. v. Pillsbury* (1916) 172 Cal. 407.) In *Western Indemnity*, we characterized the Boynton Act as "radical" but held that it did not violate the California Constitution or the Fourteenth Amendment to the United States Constitution. (*Western Indemnity*, at p. 692, see *id.* at p. 701.) Justice Henshaw disagreed, describing the Boynton Act as "obnoxious to the constitutional provisions guaranteeing equal protection, and forbidding confiscation," and predicting that the United States Supreme Court would grant review of our decision. (*Western Indemnity*, at p. 716 (dis. opn. of Henshaw, J.); see *id.* at p. 721 (dis. opn. of Henshaw, J.).) Justice Shaw agreed with Justice Henshaw that, under some circumstances, application of the Boynton Act "would be a taking for a public purpose without lawful excuse or right and without compensation." (*Western Indemnity*, at p. 735 (conc. opn. dubitante of Shaw, J., on rehg. den.).) Together, Justice Henshaw and Justice Shaw "cast doubt on whether former article XX, section 21, provided adequate support for the Boynton Act as a matter of state law."

(*Castellanos*, *supra*, 89 Cal.App.5th at p. 184 (conc. & dis. opn. of Streeter, J.).)

In 1918, the electorate was presented with an amendment to article XX, section 21 to address those doubts. The ballot materials explained that " '[t]he proposed amendment [wa]s designed to express full authority for legislation; to sanction, establish and protect the full plan in all essentials where the courts ha[d] not already passed upon it.' " (*Mathews*, *supra*, 6 Cal.3d at p. 733, fn. 11, italics omitted.) The ballot materials also called the amendment " 'a necessary amplification and definition of the constitutional authority vested in the legislature by the amendment to the Constitution adopted October 10, 1911, to enable the enactment of a complete plan of workmen's compensation . . . .' " (*Ibid.*) The materials further stated, "Our workmen's compensation act . . . should be put upon a firm constitutional basis, beyond the possibility of being attacked on technical grounds or by reason of any questioned want of constitutional authority." (Ballot Pamp., General Elec. (Nov. 5, 1918) argument in favor of Senate Constitutional Amendment No. 30, p. 56.) As *Mathews* explained, this history demonstrates the voters' intent to confirm "the constitutionality of the then existing workmen's compensation statutes." (*Mathews*, at pp. 734–735.)

In light of this purpose, *Mathews* rejected a claim that the 1918 amendment invalidated one of the "basic features" of existing workers' compensation laws (*Mathews*, *supra*, 6 Cal.3d at p. 735) — "conditioning the right to compensation upon the absence of wilful misconduct or other intentional wrongdoing" (*id.* at pp. 724–725). According to Justice Streeter, *Mathews*'s preservation of this "basic feature" of the workers' compensation system suggests that "there is a minimum constitutional

baseline to our workers' compensation system no statute can go below" and that Proposition 22 falls below that baseline. (*Castellanos, supra,* 89 Cal.App.5th at p. 181 (conc. & dis. opn. of Streeter, J.).) But this misconstrues *Mathews.* As the Court of Appeal explained, "[t]he point of *Mathews* was only that article XIV, section 4 was intended to authorize the workers' compensation system that already existed — not that those features became sacrosanct and untouchable by either the Legislature or the electorate." (*Castellanos*, at p. 151, fn. 8.)

Like Justice Streeter, plaintiffs assert that the 1918 workers' compensation system "contained the basic elements necessary to protect workers and their families" and that Proposition 22 "lacks those basic elements," thereby "frustrat[ing] the social public policy" declared by article XIV, section 4. But we agree with interveners that "the 'social public policy' language [of article XIV, section 4] does not impose a substantive requirement that the workers' compensation system cover any particular group of workers." Article XIV, section 4's declaration that a complete system of workers' compensation is the "social public policy of the State" does not alter the extent of what we held in *Mathews.*

In sum, the history of the 1918 amendment that codified, in all material respects, the present version of article XIV, section 4 demonstrates that the amendment was a response to constitutional challenges to the existing workers' compensation system. It does not show that the amendment was meant to limit the initiative power in any respect.

## C.

Plaintiffs further contend that *McPherson* is inapposite because of an express limitation in that decision. As noted,

*McPherson* held that the Legislature's article XII, section 5 power does not invalidate an initiative statute conferring additional authority upon the PUC. (*McPherson, supra,* 38 Cal.4th at p. 1025.) But we said we "ha[d] no occasion" "to consider whether an initiative measure relating to the PUC may be challenged on the ground that it improperly *limits* the PUC's authority or improperly conflicts with the Legislature's exercise of *its* authority to expand the PUC's jurisdiction or authority." (*Id.* at p. 1044, fn. 9.) Plaintiffs assert that this case presents a situation not addressed by *McPherson* because "the Legislature exercised its authority when it enacted [Assembly Bill 5], and section 7451 conflicts with that exercise of authority." They also argue that section 7451 "restrains the Legislature from exercising its plenary power to provide a complete system of workers' compensation."

We agree that section 7451 contradicts Assembly Bill 5's classification of app-based drivers as employees and that *McPherson* did not address such a conflict. But in light of our conclusion that the article XIV, section 4 power is not exclusive, it would unduly restrict the initiative power to give the Legislature what would essentially be a first-mover advantage, precluding the electorate from undoing any action the Legislature takes pursuant to article XIV, section 4. The power of initiative includes "the power to abrogate existing [laws]." (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 255.) Accordingly, the people may alter existing workers' compensation policy without running afoul of article XIV, section 4. We express no view on the outer bounds of that authority or whether article XIV, section 4 might place limits on it.

As for plaintiffs' further concern that section 7451 improperly limits the Legislature's ability to enact future workers' compensation laws, we agree with the Attorney General that section 7451 does not, by its terms, limit the Legislature's power to enact workers' compensation laws. Section 7451 operates to classify app-based drivers as independent contractors instead of employees when certain criteria are met. Against the backdrop of existing law, this classification renders app-based drivers ineligible for workers' compensation because eligibility generally depends on the existence of an employment relationship. (Lab. Code, § 3600, subd. (a).) But section 7451 itself says nothing about workers' compensation, and the Legislature has made a number of exceptions to the general eligibility rule in order to extend workers' compensation to nonemployees. (See, e.g., Lab. Code, §§ 3360 [providing conditions under which "[w]orkmen associating themselves under a partnership agreement, the principal purpose of which is the performance of the labor on a particular piece of work," may be treated as employees for purposes of workers' compensation], 3363.6, subd. (a) [providing similar conditions for "a person who performs voluntary service without pay for a private, nonprofit organization"], 3364 [setting forth similar conditions for "volunteer, unsalaried member[s] of a sheriff's reserve"].) In making these exceptions, the Legislature has asserted that it is empowered by article XIV, section 4. (See Lab. Code, § 3201 ["This division and Division 5 (commencing with Section 6300) . . . are intended to make effective and apply to a complete system of workers' compensation the provisions of Section 4 of Article XIV of the California Constitution."].)

Plaintiffs acknowledge that "[a]n initiative statute that did not prevent the Legislature from providing app-based drivers with a complete system of workers' compensation could be harmonized with article XIV." But they argue that such action by the Legislature would be stymied by section 7465's directives that the Legislature may only amend the initiative by passing a statute (with a seven-eighths majority vote) that "is consistent with, and furthers the purpose of, this chapter," and that "[a]ny statute that amends Section 7451 does not further purposes of this chapter." (§ 7465, subds. (a), (c)(2).) As plaintiffs put it, "future legislation providing workers' compensation benefits to app-based drivers . . . would constitute an impermissible amendment of section 7451." What this means, according to plaintiffs, is that any act by the Legislature to restore workers' compensation eligibility to app-based drivers would require voter approval because article II, section 10(c) prohibits the Legislature from amending an initiative statute without voter approval unless the initiative provides otherwise.

The Attorney General responds that "[i]t would be premature to address any questions about the Legislature's power to enact future legislation that defines app-based drivers as workers entitled to workers' compensation" because we cannot "predict what shape such legislation might take and what the relevant constitutional analysis would be in assessing its validity." We agree. Without any specific legislation before us, we have no occasion to decide whether a statute providing app-based drivers workers' compensation would necessarily constitute a statute that "amends Section 7451" (§ 7465, subd. (c)(2)) and triggers the voter approval requirement of article II, section 10(c). We leave open whether a future statute that changes the consequences of section 7451 in a discrete area

would properly be characterized as an amendment of section 7451. (Cf., e.g., *People v. Rojas* (2023) 15 Cal.5th 561, 568; *People v. Kelly* (2010) 47 Cal.4th 1008, 1025–1026; *People v. Cooper* (2002) 27 Cal.4th 38, 44.)

Under section 7465, the Legislature may amend provisions of Proposition 22 other than section 7451 as long as such an amendment "is consistent with, and furthers the purpose of, this chapter" and obtains a seven-eighths majority vote in each house of the Legislature. (§ 7465, subd. (a).) Plaintiffs and the Attorney General contend that section 7465's supermajority requirement may conflict with article XIV, section 4 under our reasoning in *County of Los Angeles v. State* (1987) 43 Cal.3d 46 (*County of Los Angeles*). In *County of Los Angeles*, we addressed a potential conflict between article XIV, section 4 and article XIII B, section 6. Under the latter provision, "[w]henever the Legislature or any state agency mandates a new program or higher level of service on any local government," the state must reimburse the local government for costs incurred as a result of the mandate. (Art. XIII B, § 6, subd. (a).) The question was whether legislation that increased workers' compensation benefits for local government employees was subject to article XIII B, section 6. If so, then the legislation would have been subject to a supermajority vote under article IV, section 12. (See *County of Los Angeles*, at p. 57; art. IV, § 12, subd. (d) ["Appropriations from the General Fund of the State . . . are void unless passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring."].)

We explained that "[o]ur concern over potential conflict arises because article XIV, section 4, gives the Legislature 'plenary power, unlimited by any provision of this Constitution' over workers' compensation." (*County of Los Angeles*, *supra*, 43

Cal.3d at pp. 58–59, fn. omitted.) "A constitutional requirement that [workers' compensation] legislation either exclude employees of local governmental agencies or be adopted by a supermajority vote" would "curtail the power of a majority to enact substantive changes by any procedural means." (*Id.* at p. 60.) Because such an interpretation of article XIII B, section 6 "would have an indirect, but substantial impact on the ability of the Legislature to make future changes in the existing workers' compensation scheme," we construed article XIII B, section 6 to avoid that result. (*County of Los Angeles*, at p. 59.)

Plaintiffs observe that section 7465, unlike article XIII B, section 6, is part of an initiative statute that is "subordinate to the Constitution." They argue that any "limitation on the Legislature's power to increase workers' compensation benefits," including section 7465, "would conflict with article XIV." And the Attorney General acknowledges that the seven-eighths majority requirement of section 7465 "may be constitutionally problematic" in light of *County of Los Angeles*. But interveners said during oral argument that *County of Los Angeles* is "readily distinguishable," in part because it did not actually resolve any conflict between constitutional provisions since the two provisions at issue could be harmonized.

We have no need in this case to decide the applicability of our reasoning in *County of Los Angeles* to Proposition 22 or to determine the extent to which article XIV, section 4 may limit the initiative power. We reserve these issues until we are presented with an actual challenge to an act of the Legislature providing workers' compensation to app-based drivers. To resolve the question presented, it suffices to conclude that section 7451 does not itself restrict the Legislature's authority

to enact workers' compensation legislation or otherwise conflict with article XIV, section 4.

Plaintiffs assert in their reply and answer to amicus curiae briefs that the Legislature has already extended workers' compensation benefits to app-based drivers through Assembly Bill No. 1766 (2023–2024 Reg. Sess.) (Assembly Bill 1766), which was enacted after Proposition 22. (Stats. 2023, ch. 133.) They point to a provision of Assembly Bill 1766 that prospectively revised the definition of "employee" in Labor Code section 3351, subdivision (i) to include "any individual who is an employee pursuant to section 2775." They say that by "updat[ing] an obsolete cross-reference" in this provision, the Legislature "reaffirm[ed] that 'any individual who is an employee pursuant to [Labor Code] Section 2775' (which codifies the ABC test) is covered by the workers' compensation system. (Stats. 2023, ch. 133, § 1 (Assem. Bill No. 1766), effective Jan. 1, 2024.)" But plaintiffs do not cite any authority for their claim that this updated cross-reference effectively recodifies the ABC test for app-based drivers, nor do they demonstrate that their theory has ever been tested in litigation. At this juncture, it is not clear that "there is already a direct and irreconcilable conflict between section 7451 and a statute adopted by the Legislature *after* Proposition 22 was enacted," as plaintiffs contend. In any event, that question is not before us, and we express no view on it.

## CONCLUSION

We affirm the judgment of the Court of Appeal insofar as it held that Business and Professions Code section 7451 does not conflict with article XIV, section 4 of the California Constitution.

**LIU, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Castellanos v. State of California

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 89 Cal.App.5th 131
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S279622
**Date Filed:** July 25, 2024

_____

**Court:**  Superior
**County:**  Alameda
**Judge:**  Frank Roesch

_____

**Counsel:**

Rob Bonta, Attorney General, Michael J. Mongan, State Solicitor General, Thomas S. Patterson, Assistant Attorney General, Samuel T. Harbourt, Deputy State Solicitor General, Mark R. Beckington, Jose A. Zelidon-Zepeda and Lara Haddad, Deputy Attorneys General, and Cara M. Newlon, Associate Deputy State Solicitor General, for Defendants and Appellants.

DLA Piper, Stanley J. Panikowski and Justin R. Sarno for former Attorney General Daniel E. Lungren as Amicus Curiae on behalf of Defendants and Appellants.

DLA Piper and Stanley J. Panikowski for former California Assemblyman William R. Berryhill as Amicus Curiae on behalf of Defendants and Appellants.

Eimer Stahl and Robert E. Dunn for Crum & Forster Holding Co. as Amicus Curiae on behalf of Defendants and Appellants.

California Constitution Center, University of California, Berkeley, David A. Carrillo; Benbrook Law Group and Stephen M. Duvernay for California Constitution Scholars as Amici Curiae on behalf of Defendants and Appellants.

Holland & Knight, Stacey Wang, Amit Agarwal and Keiana Wilkerson for former State Senators Robert Timothy Leslie and James Stephen Peace as Amici Curiae on behalf of Defendants and Appellants.

O'Melveny & Myers, Jeffery L. Fisher; Nielsen Merksamer Parrinello Gross & Leoni, Arthur G. Scotland, Sean P. Welch, Kurt R. Oneto and David J. Lazarus for Interveners and Appellants.

Eimer Stahl, Robert E. Dunn and Collin J. Vierra for Citizens in Charge as Amicus Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Allen Matkins Leck Gamble Mallory & Natsis, Marshall C. Wallace, Alexander J. Doherty and Kimberly F. Macey for Citizens in Charge and The Initiative and Referendum Institute at the University of Southern California as Amici Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Davis Wright Tremaine, Rochelle L. Wilcox and Alexa A. Graumlich for California Chamber of Commerce as Amicus Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Davis Wright Tremaine, Adam S. Sieff, Annie Zhang and David M. Gossett for Chamber of Progress, NetChoice, Asian Industry B2B, the Silicon Valley Leadership Group and sf.citi as Amici Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Holtzman Vogel Baran Torchinsky Josefiak, Alex Vogel, Edward M. Wenger and Andrew Pardue for California Policy Center as Amicus Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Willenken, Kenneth M. Trujillo-Jamison and Michelle K. Millard for California Asian Pacific Chamber of Commerce, NAACP California Hawaii State Conference, California Hispanic Chambers of Commerce, Los Angeles Metropolitan Churches, National Action Network Los Angeles, National Action Network Sacramento Chapter Inc., National Asian American Coalition and National Diversity Coalition as Amici

Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Jenner & Block, Laurie J. Edelstein and Adam G. Unikowsky for Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Baker Botts and Michael W. Ward for Arnold Schwarzenegger as Amicus Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

King & Spalding, Albert Giang, Jeffery Hammer, Anne M. Voigts and Ramon A. Miyar for Marketplace Industry Association, Inc., as Amicus Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Buchalter, Steven G. Churchwell, Berit Elam and Brandon Q. Tran for Daniel Schnur, T. Anthony Quinn and Robert M. Stern as Amici Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Weintraub Tobin Chediak Coleman Grodin and Brendan J. Begley for Independent Drivers Alliance of California, Kelly Rickert, Ali Mazhin and Stephanie Whitfield as Amici Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Wilmer Cutler Pickering Hale and Dorr, Kelly P. Dunbar, Samuel M. Strongin, Joshua H. Lerner and Michael A. Mugmon for the California Chamber of Commerce as Amicus Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Keiter Appellate Law and Mitchell Keiter for Amicus Populi as Amicus Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Mayer Brown and Archis A. Parasharami for David R. Henderson, Keith Chen, Jeffrey R. Hummel, Ethan Ligon, Michael Marlow, Lee E. Ohanian, Damian Park, Valerie Ramey, Abbylin H. Sellers, William F. Shughart II, Brian P. Simpson and Robert S. Taylor as Amici Curiae on behalf of Defendants and Appellants and Interveners and Appellants.

Jonathan M. Coupal, Timothy A. Bittle, Laura E. Dougherty and Amy C. Sparrow for Howard Jarvis Taxpayers Association as Amicus Curiae on behalf of Interveners and Appellants.

Olson Remcho, Robin B. Johansen, Richard R. Rios, Deborah B. Caplan, Benjamin N. Gevercer; Altshuler Berzon, Stephen P. Berzon, Scott A. Kronland, Stacey M. Leyton, Juhyung Harold Lee, Robin Tholin; Service Employees International Union, Nicole G. Berner, Steven K. Ury and Claire Presetel for Plaintiffs and Respondents.

Richard L. Hasen; Public Counsel, Mark D. Rosenbaum and Kathryn Eidmann for California Election Law Professors as Amici Curiae on behalf of Plaintiffs and Respondents.

Hina B. Shah; Benjamin Beach; Nayantara Mehta and Brian Chen for Gig Workers Rising, Mobile Workers Alliance, Rideshare Drivers United—California, We Drive Progress, A Better Balance, ACCE Institute, Action Center on Race & the Economy, Asian Americans Advancing Justice—Los Angeles, Bet Tzedek, California Employment Lawyers Association, California Immigrant Policy Center, Centro Legal de la Raza, Chinese Progressive Association, Economic Policy Institute, Jobs With Justice Education Fund and Jobs With Justice San Francisco, Lawyers Committee for Civil Rights of the San Francisco Bay Area, Legal Aid at Work, Los Angeles Black Worker Center, Maintenance Cooperation Trust Fund, National Black Worker Center, National Council for Occupational Safety and Health, National Domestic Workers Alliance, National Employment Law Project, Pilipino Workers Center, PowerSwitch Action, Public Rights Project, Santa Clara County Wage Theft Coalition, Women's Employment Rights Clinic of Golden Gate University School of Law and Worksafe as Amici Curiae on behalf of Plaintiffs and Respondents.

Weinberg, Roger & Rosenfeld, David A. Rosenfeld; Daniel Ocampo, Sally Dworak-Fisher, Laura Padin and Catherine Ruckelshaus for the National Employment Law Project, California Labor Federation, Rideshare Drivers United, Gig Workers Rising, Asian Americans Advancing Justice – Asian Law Caucus, Asian Americans Advancing Justice Southern California, PowerSwitch Action, Worksafe, Action Center on Race & the Economy, the Economic Policy Institute, Bet Tzedek and the California Immigrant Policy Center as Amici Curiae on behalf of Plaintiffs and Respondents.

Bush Gottlieb, Julie Gutman Dickinson, Hector De Haro and Luke Taylor for International Brotherhood of Teamsters, Local 396, International Brotherhood of Teamsters, Local 542, International Brotherhood of Teamsters, Local 848, and the Los Angeles County Federation of Labor, AFL-CIO, as Amici Curiae on behalf of Plaintiffs and Respondents.

David Chiu, City Attorney (San Francisco), Yvonne R. Meré, Chief Deputy City Attorney, Sara J. Eisenberg, Matthew D. Goldberg, Ian Eliasoph and Molly J. Alarcon, Deputy City Attorneys, Barbara J. Parker, City Attorney (Oakland), Maria Bee, Chief Assistant City Attorney, Zoe Savitsky and Divya Musinipally, Deputy City Attorneys, Katherine Read, Fellowship Attorney, Michael N. Feuer, City Attorney (Los Angeles), Kathleen Kenealy, Chief Assistant City Attorney, Michael J. Bostrom, Assistant City Attorney, Mara W. Elliott, City Attorney (San Diego), Mark Ankcorn, Chief Deputy City Attorney, Eric Laguardia, Kevin King and Julie Rau, Deputy City Attorneys, Tony Lopresti, County Counsel (Santa Clara), Kavita Narayan, Meredith A. Johnson and Raphael N. Rajendra, Deputy County Counsel, for the City and County of San Francisco, the Cities of Oakland and San Diego, and the County of Santa Clara, as Amici Curiae on behalf of Plaintiffs and Respondents.

Eric M. Overholt and Andrew W. Lockard for California Applicants' Attorneys Association as Amicus Curiae on behalf of Plaintiffs and Respondents.

Veena Dubal for Catherine L. Fisk, Sameer Ashar, Veena Dubal, Charlotte Garden, Joseph Grodin, William B. Gould IV, Stephen Lee, Sanjukta Paul, Leticia Saucedo, Reuel Schiller, Katherine Stone and Noah D. Zatz as Amici Curiae on behalf of Plaintiffs and Respondents.

Cara L. Jenkins, Stephen Dehrer and Benjamin Herzberger for State Senator Dave Cortese and State Assembly Member Liz Ortega as Amici Curiae on behalf of Plaintiffs and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jeffrey L. Fisher
O'Melveny & Meyers LLP
2765 Sand Hill Road
Menlo Park, CA 94025
(650) 473-2633

Michael J. Mongan
State Solicitor General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3920

Scott A. Kronland
Altshuler Berzon LLP
177 Post Street, #300
San Francisco, CA 94108
(415) 421-7151